## BABCOCK and Others *v.* JORDAN.

MORTGAGEE—PURCHASER IN GOOD FAITH.—The mortgagee who takes a mortgage in good faith to secure a pre-existing debt, is entitled to be regarded as a purchaser for a valuable consideration, and to be protected as such. Page 20.

JUNIOR MORTGAGE.—A holder of a junior mortgage is not bound to pay off a prior incumbrance, unless he expressly agrees to do so.

APPEAL from the *Marion* Circuit Court.

ELLIOTT, C. J.—*Jordan,* the appellee, sued the appellants and others to recover against *Melville D. Babcock,* one of the defendants, for fraud in the sale of real estate, and to make the amount recovered a specific lien on certain lots in the city of *Indianapolis.*

The complaint alleges that, on the 28th day of *January,* 1859, the plaintiff was the owner of lot 59, in the north half of lot 9, in *McCarty's* subdivision of out-lots numbered 118 and 119, in the city of *Indianapolis.* That the defendants, *Melville D. Babcock* and *Thomas Springstead,* represented to the plaintiff that said *Springstead* was the owner in fee, by a good and unincumbered title, of 375 acres of land, situated in *Randolph* county, in the state of *Virginia,* which said *Springstead* had bargained and sold to said *Melville D. Babcock* for a consideration then fully paid; and thereupon the said *Babcock* proposed to the plaintiff to have said land conveyed to him, to pay him $80 in cash, and

deliver to him two horses of the value of $100 each, in consideration of the conveyance by the plaintiff of the lots in *Indianapolis*, and their appurtenances, subject to the payment of a balance due upon a mortgage to the estate of *Nicholas McCarty*, deceased, for $180. That the plaintiff, relying upon the representations of said *Babcock* and *Springstead*, and being ignorant of the truth or falsity thereof, and having no means of information upon the subject, accepted said proposition, and then received of said *Melville D. Babcock* the sum of $80, the two horses, and the conveyance, by *Springstead*, at the request of said *Babcock*, of 375 acres of land in *Randolph* county, *Virginia*, by a deed of warranty. That *Melville D. Babcock* has been, and still is, insolvent, and by reason thereof had, for a long time, been carrying on business in the name of his father, *Henry Babcock*, an old man without means. That the plaintiff, by the direction of *Melville D. Babcock*, conveyed said lots to *Henry Babcock*, subject to the mortgage aforesaid to the estate of *McCarty*, "which said *Babcock* agreed to pay," and has paid thereon the sum of *sixty-three* dollars and *seventy-five* cents, leaving a balance of 116 dollars and 25 cents, with accruing interest.

The complaint further avers, that the representations of *Springstead* and *Melville D. Babcock*, as to the title of *Springstead* to the Virginia lands, were wholly false; that he had no land in *Randolph* county, *Virginia*, whatever, which they well knew. That after the execution of the deed by the plaintiff to *Henry Babcock*, he and his wife, *Emily Babcock*, who are also made defendants, joined in executing a mortgage upon said lots to "*Babcock & Co.*," a firm composed of *John D. Phœnix, Francis M. Babcock, John Babcock* and *Philip Phœnix*, professing to be made to secure the payment of $1,689 and 89 cents, upon sundry notes dated *May* 1, 1859; that said notes and mortgage were made and given upon the consideration of, and to secure, a debt existing prior to the making of said conveyance, and prior to any contract or engagement to make the same, and that *Henry Babcock* paid no

consideration for the lots, other than as part thereof was paid by *Melville D. Babcock.* The complaint further alleges that by reason of the fraud of *Melville D. Babcock* and *Springstead,* the plaintiff has not received the value of said lots by about $1,000, and prays that, on the final hearing, the balance due the plaintiff may be decreed a charge on said lots, and that they be sold to pay the same, and for other and proper relief. The complaint was subsequently amended by averring that, after the commencement of the suit, *John D. Phœnix,* one of the defendants, had died, and his "unknown heirs" were made defendants.

On the 30th of *March,* 1861, *Philip Phœnix, Francis M. Babcock* and *John Babcock* appeared and answered in three paragraphs, as follows:

1. By general denial.

2. That on the 10th day of *May,* 1859, the said *Henry Babcock,* being indebted to them, who are wholesale grocers in the city of *New York,* by notes amounting to the sum of $1,689, with his wife, *Emily Babcock,* executed to them a mortgage on the lots to secure said indebtedness; that at the *June* term, 1860, of the *Marion* Common Pleas Court, the last of the notes secured by the mortgage having matured, said defendants caused suit to be brought in said court for the foreclosure of the mortgage, and that such proceedings were had therein that afterward they recovered judgment against said *Henry Babcock* for the amount due on the notes, and for the foreclosure of the mortgage and the sale of said lots, in default of the payment of the judgment by *Henry Babcock.*

That afterward a proper order of sale was issued on the judgment and decree to the sheriff of *Marion* county, who afterward, on the 28th day of *July,* 1860, sold said lots to one *John Ketcham,* and that the said *Ketcham,* after receiving the sheriff's deed therefor, sold and conveyed the same to *John D. Phœnix.* They also deny all knowledge of the fraud charged in the complaint.

3. That one *William H. H. Johnson* purchased said lots

of one *Margaret McCarty,* and executed to her his note for $520, being a part of the purchase money therefor; and on the same day the said *Johnson,* for the purpose of securing the payment of said sum, executed to said *Margaret McCarty* a mortgage on the lots; and the said sum of $520 remaining unpaid, the said *Margaret* caused suit to be brought on said note and mortgage at the *June* term, 1860, of the *Marion* Court of Common Pleas, and such proceedings were had therein, in said court, that, on the 27th day of *June,* 1860, said *Margaret* recovered against the said *Johnson* the sum of 113 dollars and 63 cents, without relief from appraisement laws, and also a decree of foreclosure on the mortgage and for the sale of the lots. That said *Johnson* failing to pay said judgment, the clerk of said court issued to the sheriff of the county a copy of the decree, with an order for the sale of the lots to satisfy said judgment, interest and costs; and that the sheriff, having first legally advertised the same, did, on the 25th day of *August,* 1860, at public sale, sell the north half of said lots 118 and 119 to the defendant, *Francis M. Babcock,* for the sum of *seventy-five* dollars and *fifty-four* cents. That said sheriff thereupon executed to said *Francis M. Babcock* a deed of conveyance for the north half of said lots, &c.

The plaintiff replied:

*First,* by a general denial.

*Second.* "For further reply to the second paragraph of the answer the plaintiff says that the mortgage therein mentioned, was executed by said *Henry Babcock* for a debt existing long prior to the making and delivery of said mortgage, to-wit: before the said *Henry Babcock* acquired any title to said premises; and that before, and at the time of the purchase of said premises by said *Ketcham* at sheriff's sale, this suit was pending, and the said *Ketcham,* and all of said defendants, had due notice thereof," &c.

*Third.* That "at the time the complaint of said *Phœnix* and others was filed in said Court of Common Pleas, and at the time the judgment of foreclosure thereon was rendered,

and at the time the writ to execute the same was issued, and at the time the sale of said lots thereunder was made to said *Ketcham*, the complaint of said plaintiff herein was pending in the said *Marion* Circuit Court, of which said defendants and said *Ketcham* had notice, and the plaintiff further avers that he was not a party to said suit of foreclosure, nor bound thereby."

*Fourth.* "And for further reply to the *third* paragraph of said answer, the said plaintiff says that at the time the complaint of said *McCarty* was filed in the Court of Common Pleas of said county, and at the time said judgment of foreclosure was rendered thereon, and at the time the writ to execute the same was issued, and at the time the sale thereunder was made to said defendants, the complaint of the plaintiff herein was pending in the *Marion* Circuit Court, of which the defendants had notice. And the plaintiff avers that he was not a party to said last named proceedings of foreclosure, and was not bound thereby. That said defendants, by virtue of their mortgage from said *Babcock*, represented him, and were bound to pay off and discharge the said mortgage debt to said *McCarty*, and that their actings and doings in permitting said premises to go to sale under the same, and thereby to acquire a title against the plaintiff, were, and are, a fraud upon the plaintiff."

The defendants, *Francis M. Babcock*, *John Babcock* and *Philip Phœnix* filed a demurrer to said 2d, 3d and 4th paragraphs of the plaintiff's replication, which was overruled by the court and the ruling thereon excepted to.

Publication having been made and proved, as to the unknown heirs of *John D. Phœnix*, they were defaulted, and *R. B. Duncan* was, by the court, appointed guardian *ad litem* for them, and, thereupon, filed his answer in denial of the complaint.

A default was taken against *Melville D.*, *Henry* and *Emily Babcock*.

The suit was dismissed as to *Springstead*.

The jury, to whom the cause was submitted, found for

the plaintiff the sum of $984.80. Motion for a new trial by the appellants overruled, and a judgment against *Henry Babcock* on the finding of the jury, and that unless the same should be paid within twenty days, the lots described in the complaint should be sold, &c., to satisfy the same. We are not favored with a brief in the case by the counsel of the appellee.

The first question urged by the appellants for a reversal of the decree of the Circuit Court, arises upon the ruling of that court in overruling the demurrer to the 2d, 3d and 4th paragraphs of the plaintiff's reply to the *second* and *third* paragraphs of the appellants' answer. The *second* and *third* paragraphs of the reply are directed to the *second* paragraph of the answer, which sets up the mortgage by *Henry Babcock* to the appellants, the foreclosure thereof, and the sale of the mortgaged premises by the sheriff to *Ketcham.*

The second reply simply alleges that the mortgage to the appellants was given to secure a pre-existing debt, and that *Ketcham* had notice of the pendency of this suit before his purchase under the mortgage at sheriff's sale.

The question raised by the reply is this, viz: Is the mortgagee of a mortgage taken in good faith to secure a pre-existing debt, regarded as a purchaser for a valuable consideration, and protected as such? The replication under consideration assumes the negative; but the same question has been ruled affirmatively by this court, in the case of *Work* v. *Brayton et al.,* 5 Ind., 396. *Perkins,* J., in delivering the opinion of the court in that case, says: "The question whether a mortgagee, in a mortgage given for the security of a pre-existing debt, is to be regarded as a purchaser for a valuable consideration, has been decided differently by different courts; and there has been a like diversity of opinion upon the analogous question, whether the holder of commercial paper assigned as collateral security for a pre-existing debt, is to be treated as a holder for a valuable consideration. The latter of these questions this court decided in the affirmative in *Valette* v. *Mason,* 1 Ind.,

288; and it would seem that the principle of that case applied to a mortgagee of real estate to secure a like indebtedness, would require that he be regarded as a purchaser for a valuable consideration. * * * If it is not to be so regarded, the titles of purchasers and mortgagees for such a consideration, must be of comparatively little value, as they may, at any time, be unexpectedly overrode by secret invisible liens for unpaid purchase money to some former grantors, or by some other, till then unknown, alleged equitable claims, which might, in their origin, have been without trouble made secure by open, recorded instruments, that would have been notice to all the world. * * * * "A pre-existing debt is held to be a valuable consideration by *Story*, in the second volume of his Equity Jurisprudence, pp. 657, 658, and he cites for the doctrine *Mitford* v. *Mitford*, 9 Ves., 100, and *Bayley* v. *Greenleaf*, 7 Wheaton, 46. In vol. 2, pt. 1, p. 73, of *White* and *Tudor's* Leading Cases in Equity, they say: 'Similar decisions were made in *Richeson* v. *Richeson*, 2 Grattan, 497, and in *Dey* v. *Dunham*, 2 Johnson's Chancery R., 182;' though this latter case has not been followed in *New York*. *Kent*, in the 4th vol. of his Commentaries, p. 154, approves the doctrine, and expresses the conviction that it rests on grounds that will command general assent. He cites in support of it *Roberts* v. *Salisbury*, 3 Gill and J., 425, and *Gann* v. *Chester*, 5 Yerger's Tenn. R., 205."

The argument of the court for the justice of the rule, in the case of *Work* v. *Brayton et al.*, *supra*, would seem to be peculiarly applicable to the case at bar. Here it is not pretended that the mortgagees had any notice of the alleged fraudulent representations of *Melville D. Babcock* and *Springstead* to *Jordan*, and *Henry Babcock*, the mortgagor, derived his title directly from *Jordan*, and not through *Melville D. Babcock* or *Springstead*. The same principle was again recognized and confirmed in the case of *Wright* v *Bundy*, 11 Ind., 398. We think, therefore, that the 2d paragraph of the replication was bad, and the demurrer to it

should have been sustained.   Indeed, the complaint is bad, so far as it seeks a lien on the lots as against the appellants' mortgage.   The answer, however, goes farther, and shows a foreclosure of the mortgage, and the sale of the lots under it by the sheriff to *Ketcham*.   He derives title through the mortgage, and notice to him of the alleged fraud, before his purchase, cannot affect his title.   The second paragraph of the answer was, therefore, a valid bar to the suit, as against the appellees, and to the claim of the plaintiff for a lien on the lots for the amount he might recover for the alleged fraud.

If the title had remained in *Henry Babcock*, perhaps, under the averments in the complaint, the plaintiff might have asserted a lien as against him, but that question is not properly before us, and we do not, therefore, decide it.

The *third* paragraph of the replication avers that this suit was commenced before the suit to foreclose the mortgage to "*Babcock & Co*.," and was still pending at the time of the sale to *Ketcham*, who had notice thereof.   It also avers that the plaintiff here was not a party to the suit of foreclosure, nor bound thereby.   It was not necessary that *Jordan* should be a party to the suit of foreclosure, and he was, nevertheless, bound thereby, because the mortgagees stood in the relation of purchasers for a valuable consideration, and their equity, thereby, had priority to the plaintiff's.   The paragraph was clearly bad.

The *third* paragraph of the answer sets up a sale of the lots under a foreclosure of the mortgage to *Margaret McCarty*; and the 4th paragraph of the reply is directed to that paragraph of the answer, and alleges the pendency of this suit at the time of the commencement of that, and at the time of the judgment, foreclosure and sale under that mortgage, and notice to the purchaser; and further avers that the plaintiff in this suit was not a party to said suit of foreclosure, nor bound thereby; and that said appellants, by virtue of their mortgage from said *Henry Babcock*, represented him, and were, therefore, bound to pay off and

discharge the said mortgage debt. In reference to the latter averment, it may be sufficient to remark that it is not averred in the complaint that *Henry Babcock*, to whom *Jordan* conveyed, agreed to pay the *McCarty* mortgage, but that the alleged promise was made by *Melville D. Babcock;* nor is it averred that any notice of such promise was contained in the deed to *Henry Babcock*, or otherwise given to said appellants before their mortgage was executed. As the *McCarty* mortgage was recorded, they were bound to take notice of its existence. Without an express promise by them, however, to pay it off, they were not bound to do so; but as it was a prior lien on the lots, they were at liberty either to pay it or suffer the consequences of a defeat of their subsequent lien. The mortgage to *Margaret McCarty* was made before *Jordan* acquired his title, by *Johnson*, under whom *Jordan* held. It was prior in time and in right to any claim that *Jordan* could set up against his subsequent vendee, and if *Jordan* wished to protect his subsequent equity against a sale under that mortgage, he should have discharged it. He had the same interest in doing so as the appellants. *Jordan* was not a necessary party to the suit to foreclose that mortgage, as he had conveyed the equity of redemption to *Henry Babcock* before that suit was instituted.

We think that the 2d, 3d and 4th paragraphs of the reply were all bad, and the court, therefore, erred in overruling the demurrer to them.

Several other errors are assigned and discussed in the appellants' brief, relating to the admission and rejection of evidence on the trial, and to the instructions given by the court to the jury, and to instructions asked by the appellants and refused by the court, many of which are well taken; but as they refer to, and involve the same questions discussed on the demurrer to the replies, we deem it unnecessary to notice them further here.

The court below rendered a judgment for the amount found by the jury against *Henry Babcock*. It is not readily

perceived upon what principle this was done, as the promises and alleged fraudulent representations are claimed to have been made by *Melville D. Babcock*, and not by *Henry*. But as he did not join in the appeal, no question in reference to it is before us, and we, therefore, decide nothing on that subject.

The judgment of the court below is reversed, with costs, as to the appellants, and so far as it makes the judgment against *Henry Babcock* a lien on the lots, and directs their sale, &c. The cause is remanded for further proceedings in the court below in accordance with this opinion.

*W. Henderson, T. A. Hendricks* and *O. B. Hord*, for appellants.