## PLANTERS' BANK OF TENNESSEE v. H. C. EVANS.

Suit by indorsee against maker of following instrument : " Ten months after " date pay to the order of myself thirty-nine hundred dollars, for value " received, and charge to account of, yours, H. E——.   To M. C. & Co., " New Orleans, La. ;" which instrument was accepted by M. C. & Co., and bore the indorsement in blank of the maker and payee.  *Held*, that it was optional with the indorsee either to treat this instrument as a bill of exchange, and sue the drawer and the acceptor together ; or to treat it as a promissory note, and sue the maker alone.  *Held further*, that such an instrument, when delivered to the drawee, imports that it is not drawn against funds of the drawer in the hands of the drawee.   And as the indorsee acquired the instrument before maturity, it is *further held*, that no defense was presented by an answer which alleged that the defendant had settled it with M. C. & Co., the drawees, without notice of its transfer to the plaintiff.  (Evans, P. J., dissenting.)

ERROR from Sabine.   Tried below before the Hon. M. W. Wheeler.

The opinion of the court clearly states the case.

*F. B. Sexton*, for the plaintiff in error.

No brief for the defendant in error has reached the hands of the reporter.

OGDEN, J. At the fall term, A.D. 1866, of the District Court for Sabine county, suit was instituted by the firm of M. D. Cooper & Co., for the use of the Planters' Bank of Tennessee, and against the defendant in error, on the following instrument of writing:

" $3931.48.                    Milam, Texas, 18th April, 1861.

" Ten months after date pay to the order of myself thirty-nine " hundred and thirty-one dollars and forty-eight cents, for value " received, with interest at the rate of eight per cent. per annum, " from maturity till paid by me, and charge to account of,

" Your obedient servant,

" H. C. EVANS.

" To M. D. Cooper & Co., New Orleans, La."

Across the face of this instrument was written " M. D. " Cooper & Co." On the reverse side of it was the following blank indorsement : " H. C. Evans."

The original petition filed in the cause alleges the fact that the instrument sued on was executed by defendant in satisfaction of a previous indebtedness from H. C. Evans to M. D. Cooper & Co., and that M. D. Cooper & Co., for a valuable consideration, and in the due course of trade, transferred and delivered the same to the Planters' Bank of Tennessee, and that thereby said bank became the "*bona fide*" owners and holders of said instrument of writing. They further allege failure and refusal to pay the same, and pray for judgment in favor of said bank.

In an amended petition the Planters' Bank of Tennessee, representing itself to be the true holder and owner of said instrument of writing, asked permission to drop the name of M. D. Cooper & Co. as the nominal plaintiffs, and to prosecute the suit in its own corporate name. Defendant in his several answers plead the general issue, payment, accord, and satisfaction, or compromise. From the pleadings and evidence, it appears that the instrument sued on was transferred by delivery, before its maturity, from M. D. Cooper & Co., to the Planters' Bank of

38

Tennessee, as a collateral security for a debt due that Bank from Cooper & Co., and that subsequently, and after the maturity of the bill, or draft, the defendant renewed the same, by delivering to a member of the firm of M. D. Cooper & Co., who was ignorant of the fact that the original had been transferred to the Planters' Bank of Tennessee, and without the knowledge or consent of said bank, another draft or bill of like import with the original, but including the interest on the original sum, and that in 1865 the defendant Evans settled and compromised the latter instrument with the agent of M. D. Cooper & Co. Defendant therefore claims that he is discharged from all liability on the original instrument.

There were two trials in the court below, and a judgment both times for the defendant, and the plaintiff has brought the cause to this court, by writ of error, for revision, and has assigned several errors as a cause for a reversal of the judgment. We have examined the pleadings and evidence in this cause with great care, and are of the opinion that the rights of the parties in this suit must depend upon the proper determination of three inquiries, viz.: the character of the instrument sued on; the effect of the transfer by M. D. Cooper & Co. to the Planters' Bank of Tennessee; and the rights of the defendant under the compromise, payment, and satisfaction.

The instrument sued on, though in the form of a bill of exchange, has much the force and effect of a promissory note. It is drawn by defendant, H. C. Evans, and payable to the order of the drawer, and then indorsed in blank by him and delivered to M. D. Cooper & Co., the drawees. The maker thereby became the drawer, the payee, and indorser, and the indorsement having given the instrument a negotiable character, the maker or drawer became liable to pay the drawees, or, if accepted by them, the holder or bearer, the amount specified; and Justice Story says, he may be sued as the indorser of a bill of exchange or the maker of a promissory note, at the election of the holder. (Story on Bills of Exchange, Section 35 ; Story on Promissory Notes, p. 19, Section 16.)

This form of an instrument, when delivered to the drawee, negatives the idea that the drawer had funds or credit in the hands of the drawee, and gives it the character of a promise to pay. The evidence in this case shows most clearly that such was the intention of the parties; the defendant was indebted to M. D. Cooper & Co., and the instrument sued on was given in satisfaction of that indebtedness, but in order to give it the appearance of a mercantile paper the note was drawn in the form of a bill of exchange. We are, therefore, of the opinion that the maker of this instrument was liable to M. D. Cooper & Co., and, when accepted by them, to the bearer, as though the same had been a simple promissory note.

This instrument was transferred by M. D. Cooper & Co. to the Planters' Bank of Tennessee for a valuable consideration, and before the maturity of the same. The bank then took it free of all equities between the antecedent parties, of which it had no notice (Story on Promissory Notes, Section 178); and it is immaterial whether it was transferred in payment of a precedent debt, or as collateral security for a precedent debt, or for future as well as past advances. (Story on Promissory Notes, Section 195, and Note.) It may maintain suit on it in its own name, and treat the same as its own property absolutely. This question was fully discussed and definitely settled in the case of Greenaux v. Wheeler, 6 Texas, 522; Weathered v. Smith, 9 Texas, 625; and Swift v. Tyson, 16 Peters, 15.

But it was claimed on the trial below that as M. D. Cooper & Co. accepted the bill by writing their firm name across the face thereof, before the transfer, they thereby became liable as acceptors, and should have been sued with the drawer, and been held primarily liable for the payment of the same. This might have been true if the instrument sued on had been purely a bill of exchange, and that the drawee, at the time of the execution and acceptance of the bill, had funds or credits of the drawer in their hands. But we are of the opinion that the plaintiff correctly treated the instrument as a promissory note, and was authorized to sue the maker and acceptor together, or

the maker alone, at pleasure. The conclusion, therefore, becomes inevitable that on the " *bona fide* " transfer of the instrument sued on, M. D. Cooper & Co. lost all power or control over it, or the demand evidenced by it, without express authority from the Planters' Bank of Tennessee, and all payments made to, or settlements or compromises made with M. D. Cooper & Co., after said transfer, could in no wise affect the instrument sued on, or the defendant's obligations under the same, unless Cooper & Co., at that time, as agents of the bank, had authority to make such settlement ; and if the defendant, through carelessness or otherwise, has paid Cooper & Co. for a written and negotiable obligation of his while the same was in other hands as owner, and failed to demand that instrument for cancellation, then he must look alone to Cooper & Co. to refund the amount they have received without authority.

We are, therefore, of the opinion that the court below erred in not sustaining plaintiff's exceptions to the answers and pleas of defendant. This suit was brought by the Planters' Bank of Tennessee, and therefore all pleas of payment, settlement, compromise, or remission, to or by M. D. Cooper & Co. (who were no parties to the suit) should have been stricken out, unless defendant had also charged knowledge of and authority from the bank for such a disposition of his debt. This view of the law of the cause will necessitate a reversal of the judgment of the District Court ; and in sending the case back for a new trial, we feel called upon to notice appellant's eighth assignment, that the court erred in submitting special issues to the jury. The court may not, under the law, have erred in submitting special issues, but we are of the opinion that the issues presented were erroneous, and while we do not feel authorized under the law to condemn altogether the practice of submitting special issues to a jury, yet we think the court should be careful, when it does adopt that practice, to submit such as the law and the facts will warrant. This practice in effect takes much from the judgment and discretion of the juries, which the ordinary practice and the law

contemplate they should exercise; and therefore when that practice is adopted it should be with great prudence and care. The judgment of the District Court is reversed and the cause is remanded.

EVANS, P. J. The instrument which is the foundation of this suit is a bill of exchange, drawn by the defendant in error, Evans, on M. D. Cooper & Co., of New Orleans, and by them accepted. The bill is made payable to the drawer's order, and by him indorsed in blank, and delivered to the Planters' Bank of Tennessee.

The circumstance of its being made payable to the order of the drawer, does not, either on principle or authority, when the bill is indorsed, affect the character of the instrument.

In treating of forms of bills of exchange Byles says, that " the drawer is sometimes the payee, and this is recognized by " all the authorities on this subject, as a good bill of exchange." (Byles on Bills, p. 60.)

Lord Holt says: " Pay me or my order, is a bill of ex- " change, if accepted, and this is the only way to make a bill of " exchange, without the intervention of a third party." (Butler v. Crips, 1 Salkeld, 130.)

Story says: " Bills of exchange may also vary as to their form, " in respect to the number of parties thereto. In the ordinary " form of bills there are usually three parties, the drawer, the " payee, and the drawee. But a bill is sometimes drawn payable " to the order of the drawer, and then it may embrace two " parties only, himself and the drawee. But in such a case, if " the drawer indorses it, the indorsee becomes in effect the payee " in lieu of the drawer." (Story on Bills, Section 35.)

An instrument in this form, before it is indorsed, and in the hands of the drawer or acceptor, imports simply a contract between the drawer and the acceptor, and may be declared on as a promissory note. But when indorsed to a third party, the indorsee becomes the payee; it is then a bill of exchange, complete in every particular.

" A bill," says Chitty, " drawn payable to the drawer him-
" self is defective.    It imports simply an obligation, when
" accepted by the acceptor, to pay the drawer; it lacks one of
" the essential requisites of a bill of exchange—its negotia-
" bility."

Again, if the bill be drawn " payable to the drawer's order,
" and he makes no order, it is still in his hands, if accepted,
" only a contract between the drawer and the drawee, in the
" nature of a promissory note."    But when indorsed, it becomes
a contract between three parties, and is not to be placed in the
category of defective or ambiguous instruments, which may be
treated either as a bill or note, at the option of the holder.

The counsel, in his brief for the plaintiff in error, cites Story
on Bills, Section 35, in support of his construction of this instru-
ment.    The passage cited is as follows :  " But a bill  drawn by
" the drawer to a third person, requesting the latter to pay to
" his own order a particular sum for value received, would not
" be entitled to be deemed a bill of exchange, for every bill of
" exchange presupposes a duty of the drawee to pay the money
" to some other person than himself."

It is only necessary to point out the fact that Story refers in
this connection to an instrument drawn payable to the *drawee's
order*, and which is clearly not a bill of exchange. (See Regina
*v.* Bartlett, 2 Moody & Rob., 362.)

In that case the prisoner, Bartlett, was indicted for forging
and uttering a bill of exchange, and the acceptance of a bill of
exchange.

The document was in the following form :

"November 10th, 1840.

" Please pay to your order the sum of forty-seven pounds, for
" value received.

" J. BISHOP."

" To Mr. G. Peckford, Yeovil."

" Accepted, G. Peckford."

Lord Erskine held that this could not be called a bill of ex-
change ; it was nothing more than a request to a man to pay

himself, and the acceptance of such a document laid the acceptor under no obligation to a third party.

Had Evans, in the case under consideration, drawn the bill on Cooper & Co., payable to Cooper & Co. or order, the citation would have been in point.

Equally inapplicable is the following citation:

" The drawer may at once become drawer, payee, and drawee; " as, for example, if he should draw a bill on himself, payable " to his own order at a particular place, naming no drawee, and " then should indorse it over; the indorsee might sue him as " acceptor of the bill, or as maker of a promissory note, at his " election." (Story on Bills of Exchange, Section 35.)

" But in practice," says Parsons, " it is usual to declare upon " the instrument, as if it were a bill, not admitting the identity " of drawer and drawee." (1 Par. on Bills and Notes, p. ——; Chitty on Bills; Roach v. Osler, 1 Man. & Ry.)

I need not adduce other authorities to show that the instrument before us does not fall in that class of bills that are defective for the want of parties. It is drawn by one party on a second, and payable to a third, the indorsee who becomes the payee. The liability, the rights and obligations of the respective parties, are as clearly defined as though the name of the Planters' Bank of Tennessee had been written on the face of the bill as payee. The nature of this contract is stated by Chitty, in treating of the liability of the drawer, as follows:

" Upon delivery of the bill to the *payee or indorsee*, the *lia-* " *bility* of *the drawer* becomes complete. The act of *drawing* " a bill implies a contract from the drawer to the *payee* 　*　 　* " that the person on whom he draws is capable of binding him- " self by his acceptance, that he is to be found at the place where " he is described to reside, and that he will pay it when it be- " comes due if presented in proper time for that purpose; and " that if the drawee fail to do either, he, the drawer, will pay " the amount, provided he have due notice of the dishonor." (Chitty on Bills, 192.)

Again, " The *acceptor is primarily* and *originally* liable to

" pay the bill, * . * But although he is thus primarily liable,
" it seems reasonable to hold that he is not liable for his own
" debt, but for that of another; therefore, although he is *pri-*
" *marily* liable, yet it does not follow that in the origin of the
" transaction, he was the *primary debtor*, or at least that he
" was *antecedently a debtor*. And he is under no other implied
" contract or liability, beyond that created by the acceptance
" itself." (Chitty on Bills, 304.)

It follows that the act of drawing this bill implies a contract
from the drawer, Evans, to the payee, the Planters' Bank of
Tennessee ; that M. D. Cooper & Co. are capable of binding
themselves by their acceptance; that they are to be found at
New Orleans, and that they will pay the bill when due, if pre-
sented in proper time for that purpose ; and if they fail to do
either, Evans, the drawer, will pay the amount. It implies a
contract from Evans to M. D. Cooper & Co., to have them in
funds at the maturity of the bill.

It follows that the drawer, Evans, was discharged, in the ab-
sence of presentment and notice, unless it clearly appear that he
had no funds in the hands of the drawees, to meet it at maturity,
and no *reason to expect that it would be paid*.

In Byles on Bills, 267, it is stated that " absence of effects in
" the drawee's hands will, as against the drawer, dispense with
" the necessity of presenting for payment." And the same
doctrine is laid down by Parsons in his "Mercantile Law,"
106 ; in support of which he refers to Dickens *v.* Beal, 10 Pe-
ters, 572, and Ford *v.* Womack, 2 Ala., 368.

In the case of Dickens *v.* Beal, Justice Baldwin, delivering
the opinion of the court, says, " An established exception to
" the general rule that notice of the dishonor of a bill must be
" given to the drawer is where he has no funds in the hands of
" the drawee; but of this exception there are some modifica-
" tions. If the drawer has any funds or property in the hands
" of the drawee; or there is a fluctuating balance between
" them in the course of their transactions; or a reasonable ex-
" pectation that the bill would be paid; or if the drawee has

"been in the habit of accepting the bills of the drawer with-
"out regard to the state of their accounts, this would be
"deemed equivalent to effects.   Or if there was a running ac-
"count between them."

In all such cases the drawer is considered as justified in draw-
ing, as so far having a right to draw that the transaction cannot
be denominated a fraud ; for in such a case it is a fair commer-
cial transaction, in which the drawer has a reasonable expecta-
tion that his bill will be honored; and he is entitled to the same
notice as a drawer with funds, or *authority* to draw without
funds.

But unless he draw under some such circumstances, his draw-
ing without funds, property, or authority, puts the transaction
out of the pale of commercial usage and law ; and as he can in
no wise suffer by want of notice of the dishonor of his drafts,
that is deemed a useless form.

In the case of Ford *v.* Womack, 2 Ala., 368, Collier, Ch. J., re-
views the case of Dickens *v.* Beal, 10 Peters, and concurs fully
in the opinion of Justice Baldwin therein.

Applying the law relative to presentment and notice as laid
down, it is clear that by the omission of the plaintiff to present
the bill to M. D. Cooper & Co., and give notice of dishonor,
Evans was discharged.   He was not only authorized, but re-
quested to draw on Cooper & Co., and had every reason to sup-
pose that the bill would be paid.   Cooper & Co. were his com-
mission merchants, with whom he had frequent dealings and a
running account.   Cooper & Co., anticipating that the cotton
might not reach them in time, wrote to Evans to send a renewed
check, on which they could realize funds to save the first from
protest.   In compliance with this request, Evans sent forward
a renewed draft, which was subsequently discharged by com-
promise before the institution of this suit.

It cannot, therefore, be said that Evans had no authority to
draw on Cooper & Co., or that he had no funds in their hands
to meet the bill.   The renewed draft itself was funds amply
sufficient, in the opinion of Cooper & Co., to meet the original

one, and had it been presented it would doubtless have been paid.

Neither can it be said that Evans sustained no damage by the failure to present and give notice. He was damaged to the amount of the renewed check, which he paid off. But it is alleged that Evans did not pay the full amount, but only a part, by compromise which he obtained through misrepresentation. But concede that he did not pay the full amount; still he paid Cooper & Co. over two thousand dollars, for which he is clearly entitled to credit.

But it is assumed that the payment by Evans, after maturity, was in his own wrong. This assumption is sustained by no authority, and arises from a misapprehension of the nature of the contract imported by a bill of exchange. The want of funds at maturity, does not discharge the acceptor from his obligation to the payee, and hence the obligation of the drawer, to protect the acceptor by supplying him with funds, continues, and if before protest he has funds in the hands of the acceptor, he is discharged. I therefore cannot concur in the opinion of the court.

Reversed and remanded.