## WM. M. RICE v. MALINDA SODERS.

(Case No. 2858.)

1. EQUITIES — PURCHASER FOR VALUE — PRE-EXISTING DEBT. — Crediting on a pre-existing debt due the firm by his vendor, the price of land conveyed by the debtor to one of the members, is, as against prior equities of third parties therein, a sufficiently valuable consideration to support a conveyance of land to the vendee, where he has no notice of such equities. Greneaux v. Wheeler, 6 Tex., 528; Blum v. Loggins, 53 Tex., 121; Planters' Bank v. Evans, 36 Tex., 495; Alstin v. Cundiff, 52 Tex., 464; Johnson v. Newman, 43 Tex., 642.

APPEAL from Falls. Tried below before the Hon. D. M. Prendergast.

On the 29th of July, 1874, the appellee, Malinda Soders, filed her suit against E. C. Stuart, administrator of S. S. Ward, deceased, alleging the execution of the notes sued on by S. S. Ward to her in consideration of one thousand two hundred and eighty acres of land described in her petition; the proof and presentation of the claim against the Ward estate, and its allowance and approval; the non-payment of the notes, and that appellant Rice had acquired the "equity of redemption" of the land, and praying a foreclosure of her vendor's lien.

The defendant Stuart failed to answer. Appellant answered, alleging his purchase of the land from Ward, without notice of appellee's vendor's lien, for a valuable consideration.

The testimony adduced on the trial was as follows:

Plaintiff read in evidence the notes described in the petition, their probate, presentation, allowance and approval against Ward's estate. The notes bore date 2d October, 1867.

Plaintiff then proved by J. W. Watkins "that, after the notes described in plaintiff's petition had been made by S. S. Ward to the plaintiff, she deposited them and two other notes, bearing even date and of like amount, with witness for safe-keeping and collection. That Ward, in paying the other two notes, told witness that these notes were given for one thousand two hundred and eighty acres of land described in plaintiff's petition."

The plaintiff, being sworn, testified "that, shortly before the death of A. L. Soders, he sent for Ward and sold him the land described in plaintiff's petition and took the notes sued on from him, payable to plaintiff, for a part of the purchase money, saying that he wanted her (plaintiff) to have the benefit of the land, and that he thought it would be better for her to have the notes than the land left her. And A. L. Soders gave her the notes."

Plaintiff then proved by F. A. Rice:

"That he bought the land described in the petition from S. S. Ward for Wm. M. Rice."

"That he did not know of any vendor's lien being on the land."

"That Wm. M. Rice did not pay anything out on the land, but that S. S. Ward was largely indebted to Wm. M. Rice & Co. at the time of the purchase, contracted long before, and that the price of the land was credited on the debt due Rice & Co. by Ward. The price of the land credited to Ward was $2 per acre. That he bought other property at the time on this debt, and after giving Ward credit therefor, there was still due thereon about $7,000."

"At the time of the trade I examined the record and found no lien and inquired about the title, and Ward declared to me that the title was clear."

Defendant read in evidence the deed from A. L. Soders to S. S. Ward, dated September, 1867, conveying the said land. The deed recited receipt of the full consideration, $600. The deed from Ward to Rice is a warranty deed.

Judgment was rendered for plaintiff, subjecting the land to the notes, ordering sale, and subrogating Rice to the plaintiff's rights against the estate of Ward.

Rice appealed, assigning as error:

1. "The court erred in adjudging the notes sued upon to be a lien for the purchase money on the land described in the petition, because the facts do not show that the notes were given for the purchase money, the notes being dated October 2, 1867, and the deed from Soders to Ward being dated September, 1867."

2. "The court erred in rendering judgment enforcing the lien of the notes against the land, because Rice appears to have been an innocent purchaser, *bona fide* and for a valuable consideration, without notice," etc.

*T. P. & B. L. Aycock* and *D. U. Barziza*, for appellant.

*Goodrich & Clarkson*, for appellee.

A. S. WALKER, J.— The testimony was sufficient to show the lien as against Ward's estate.

In considering the second assignment there has been some difficulty, owing to the inconsistent, if not contradictory, decisions, even in our own courts, upon the question.

The vendee taking a deed acknowledging on its face the payment of the purchase money is at least the holder of the apparent legal title against his own vendor, and whose vendee, without notice and for a valuable consideration paid, will take the title discharged of the lien or claim of the original vendor.

This legal title can only be attacked by the lien holder by showing that the subsequent purchaser had notice or was charged therewith at his purchase, or had not paid a valuable consideration.

There is no claim that Rice, in this case, had notice.

It is in evidence that Rice gave for the land the consideration, whatever it be, of crediting upon the account of Wm. M. Rice & Co. against his vendor, Ward, to the amount of $2 per acre of the tract. This, it is insisted by appellee, and it was so held in the court below, was not a valuable consideration paid, such as to support the defense of *bona fide* purchaser; or, rather, that upon such fact appearing, the land in Rice's possession became subject to the vendor's lien.

In Spurlock *v.* Sullivan, 36 Tex., 516, 517, the supreme court, Ogden, J., delivering the opinion, held that such antecedent indebtedness was not a sufficient consideration. In the opinion, as authority, with several other citations, is given from Willard's Eq. Jur., p. 256, the following citation: "The rule with regard to purchasers of realty is the same as that in respect to indorsees of negotiable or commercial paper. It is not enough to shut out the equities of prior parties to a note that the holder received it in good faith and before maturity, unless he paid value, or parted with a consideration upon the faith of the paper. If he receives it on account of previous indebtedness, although upon a valid consideration between the parties, he is in no worse condition with respect to such previous indebtedness than before."

In Greneaux v. Wheeler, 6 Tex., 528, our court, Hemphill, C. J., delivering the opinion, following the authority of Swift v. Tyson, 16 Pet., 1, it had been held (at the time of the opinion in Spurlock v. Sullivan), "that from the current of authorities such consideration (a pre-existing indebtedness) is valuable; and that a note is taken in the *bona fide* course of trade when transferred on such consideration."

In the recent and elaborate opinion of Moore, C. J., in Blum v. Loggins, delivered March 19, 1880, at Galveston, the doctrine as stated in Greneaux v. Wheeler is approved, the court holding: "When a negotiable instrument is transferred before due and without notice in such a manner as to pass the legal title, whether this is done in payment of a present or pre-existing debt of the assignor, the holder is no doubt protected against defenses which would be available against the original payee."

Thus it appears that so much of the extract relied upon in Spurlock v. Sullivan as relates to holders of negotiable notes taken for antecedent indebtedness is not authority. Indeed, the rule, as in Greneaux v. Wheeler was recognized by Justice Ogden in Planters' Bank v. Evans, 36 Tex., 595.

In the recent case of Alstin v. Cundiff, 52 Tex., 464 (Op. January 30, 1880), in which a secret equity was asserted against the legal title, the holder having paid therefor by the release and satisfaction of an old debt, the modified rule as to holders of negotiable notes for value was applied to the purchaser *bona fide* of real estate without notice so as to protect against the trust. Bonner, J., delivering the opinion, after citing from Greneaux v. Wheeler and Swift v. Tyson, announces the doctrine, "although there can be found many decisions against the application of this doctrine to the purchase of real estate, yet we cannot see why, upon principle, it should not be thus applied, particularly in cases where the original indebtedness is given up and canceled. And it is thus decided in courts of high authority." Citing Love v. Taylor, 26 Miss., 574; Padgitt v. Lawrence, 10 Paige Ch., 180; Work v. Brayton, 5 Ind., 397; Babcock v. Jordan, 24 Ind., 19.

Much importance is attached in some decisions to the surrender of the security, or evidence of indebtedness, as a compliance with the rule requiring that something be parted with by the vendee at his purchase; that his situation be changed.

This distinction does not seem called for in the late cases as necessary to the decisions.

The old rule gives to what is the mere evidence of indebtedness a greater importance than to *the fact* of the indebtedness.   The obligation in law and in morals is as great to pay a book account as to pay a debt evidenced by a note or bond.   Yet in surrendering an account on its payment, no *evidence* or *security* would be parted with as when a note is given up.

It is difficult to see why a given number of dollars of indebtedness satisfied on the payment of a debt evidenced in one way would have a greater purchasing power than when applied to a debt evidenced in another mode.

Why should additional sanctity be added to the transaction if the creditor obtain from his debtor a negotiable note for the exact part of the past indebtedness to be liquidated in the land trade and surrender the note so obtained as a consideration?

A receipt given for part payment of an account as evidence is, at least, more easily used, if it be not a higher grade of evidence than that had by the creditor for the debt; and, if the apparent reason of the distinction be followed, such payment upon an account would be a valuable consideration.   But why so, rather than a payment upon a note?   It is the satisfaction of the indebtedness, in whole or in part, which is the consideration.   It would seem, therefore, as between parties in their own dealings, that a credit upon a debt ought to signify value equally as a surrender of the evidence.   It is otherwise in judicial sales.

Besides, in this case, Rice, the purchaser, did more than credit the amount of the purchase money upon an antecedent indebtedness due to himself.   His purchase was made and the land paid for by crediting; that is, satisfying *pro tanto* the account of Wm. M. Rice & Co. against Ward.

On taking the land, Rice became chargeable (it seems the land was bought by Rice and not by the firm) to Wm. M. Rice & Co. with the amount of the purchase. A cancellation of the trade between Rice and Ward would not restore Rice's account with the firm of Wm. M. Rice & Co. to its condition before the purchase. It might cast upon him that part of the account. The proportion of the sum credited upon the account owned by the others of the firm would be a consideration satisfied by the trade. This would be valuable — something paid out or lost in the trade not restored on its rescission. Johnson v. Newman, 43 Tex., 642.

Following the authority of Alstin v. Cundiff, and for other reasons given herein, we consider that the court erred in holding that Rice's purchase was not for a valuable consideration paid. Upon the facts, the judgment should have been for the defendant.

.For this error the judgment should be reversed.