**NOE v. SMITH et al.**

No. 6660—Opinion Filed Nov. 27, 1917.

Rehearing Denied Jan. 22, 1918.

(Syllabus.)

1. **Vendor and Purchaser—Rights of Innocent Purchasers — Investing Another with Authority.**

When an instrument which clothes another with the indicia of title to property is used by him, the equities of innocent purchasers are protected. For where the true owner holds out another or allows him to appear as the owner of, or as having full power of disposition over, the property, and thus leads a third person to do what he would not otherwise have done, the owner will not then be allowed to subject such third person to loss or injury by disappointing the expectations upon which he acted.

2. **Deeds—Vendor and Purchaser—"Consideration" — Antecedent Debt.**

(a) The complete satisfaction and discharge of an antecedent debt is a valuable consideration for the conveyance of real estate.

(b) A complete satisfaction and discharge of a pre-existing debt to a partnership is a valuable consideration for the conveyance of real estate to a member of the firm, since the proportion of the sum credited upon the account owned by the other members of the firm is cast upon that member to whom the real estate is conveyed.

3. **Vendor and Purchaser—Bona Fide Purchaser — "Purchaser for Value."**

Where a purchaser in good faith and without notice has changed his position for the worse, and is placed in a worse condition than he was before, he is a purchaser for value, and is entitled to the protection of the recording acts.

Error from District Court, Seminole County; Tom D. McKeown, Judge.

Action by T. H. Smith against Frank R. Noe and D. A. Marlow to cancel a deed and to quiet title. Judgment for the plaintiff, and defendant Noe brings error. Reversed and remanded, with directions.

John W. Willmott, for plaintiff in error.

Crump, Fowler & Skinner, S. S. Orwig, and T. S. Cobb, for defendant in error Smith.

BRETT, J. This action was commenced in the district court of Seminole county by T. H. Smith, one of the defendants in error, as plaintiff, against Frank R. Noe and D. A. Marlow, as defendants, to quiet title in a 120-acre tract of land described in the petition. The material facts are:

That the land was originally owned by a Seminole freedman, who in 1911 deeded the land to D. A. Marlow by general warranty deed for a consideration of $800. Smith, however, furnished the purchase price of the land. Marlow later filed suit in his own name, to cancel an outstanding spurious deed, and quiet title to the land in himself. In the summer of 1912, Smith requested Marlow to execute a quitclaim deed to him, which Marlow refused to do. In March, 1913, Marlow conveyed the land by warranty deed to the defendant Noe for a consideration of $1,000. Marlow owed Noe Bros., of which firm defendant Frank R. Noe was a member, $295.85, and the defendant Noe credited this account in full, and paid Marlow the difference of $704.15 in cash. When Noe's deed was placed of record, Smith immediately notified him that Marlow did not own the land, but only held it in trust for him. Also told Noe that he had better take steps to protect himself against Marlow's fraud, since he intended to file suit at once to cancel the deed.

The suit was filed, and Smith's petition alleges in substance that he furnished the full consideration for the purchase of said land, and that title was taken in the name of the defendant Marlow, the defendant Marlow holding the legal title in said land for the use and benefit of Smith, the

equitable owner, and that thereafter said land was conveyed by said Marlow to Noe, at which time the said Noe well knew that said Smith was the owner of said land, and that said Noe was therefore not an innocent purchaser of same for value, and prays that the court decree him the owner of said land and quiet the title thereto in him. Noe answered by general denial, and also that he was an innocent purchaser for value.

The only issue raised by the pleadings upon which there was any controversy is whether or not Noe was an innocent purchaser for value. The case was tried to the court and upon this controverted question the court, in his finding of facts, says:

"While there are a number of circumstances in this case that would justify the court in finding that the defendant was not an innocent purchaser, yet the said circumstances are susceptible of explanation, and, being so explained, the court concludes that the defendant Frank Noe was an innocent purchaser, to the extent of the amount of the money actually paid, to wit, $704."

The court then proceeded to cancel the deed from Marlow to Noe, and quiet title in Smith, and gave Noe judgment against both Smith and Marlow for $704.15, which was the amount of the purchase price that Noe paid in cash. The case is brought here by Noe by petition in error and case-made, asking for a reversal, and that he be adjudged owner of the land in controversy. And Smith files his cross-petition, and asks that he be relieved of that part of the judgment requiring him to reimburse Noe for the cash Noe paid Marlow in the deal.

The one question in this case which must determine the rights of the parties is whether or not, under the law and facts, Noe was an innocent purchaser for value. There are a number of assignments of error in both the petition and cross-petition in error, but they all converge to the one question as to whether or not Noe was an innocent purchaser for value, and we will consider this question, bearing in mind the different angles from which this question is presented by the assignments and arguments of counsel.

Smith, the plaintiff below, insists that Noe was not and could not, under the law, have been an innocent purchaser for value; that there were facts known to Noe that under the law put him on inquiry. And if he had prosecuted this inquiry with ordinary diligence it would have led to actual knowledge of the fact that Marlow was only holding the legal title to said land for the use and benefit of Smith, who was the equitable owner. And one fact that he says should have put Noe on inquiry, and which is argued most strenuously, is that Marlow sold Noe the land for $1,000, when the evidence showed it was worth from $2,000 to $3,000, and that this gross inadequacy of consideration was a circumstance that should have aroused suspicion and suggested inquiry.

But, under the facts in this case, we fail to see the force of the argument. For only about two years before Noe bought the land of Marlow, Marlow had purchased it for only $800, and in his deal Noe was making a profit of $200 on an $800 investment. And there was certainly nothing in that transaction to arouse suspicion. Besides, the records showed the title to be in Marlow, and the district court, in a suit instituted by Marlow for that very purpose, had decreed Marlow to be the owner in fee of this land.

Smith sat by and permitted all this to be done without asserting any interest in the land, as he says, "because he entertained such confidence and trust in Marlow." And yet he insists that Noe, and all the rest of the world, should have looked with suspicion upon every action of this very man in whom he had such great confidence, and should have even questioned his title to and his right to convey a tract of land, which the records and a solemn decree of the district court showed him to own in fee.

But it seems to us that even if Smith had "entertained such great confidence and trust in Marlow," that, as he says, "he had permitted him to carry his check book, and check upon his account, to deal in cattle and hogs for him, and to go to Texas and buy several carloads of cattle for him on his own judgment, and to hold this land in trust for him," yet when Marlow, in the summer of 1912, refused to give him a quit-claim deed to this land, which he was only holding in trust for him, that should have aroused Smith's suspicion, and led him to take steps to protect himself and the world against the possibility of the very thing that did occur, and of which he is complaining in this suit.

It was his negligence that made this fraud possible. He had clothed Marlow with the indicia of title, and neglected to take steps to protect himself, when he had reason to believe that Marlow intended to use that indicia of title to defraud him. And in such cases, when an instrument which clothes another with the indicia of title to property is used by him, the equities of innocent parties must and will be considered. And there

is nothing in this record which, when viewed in the light of our common everyday experiences, would charge Noe with knowing that Smith had any interest in this land, or put him upon inquiry as to the right of Marlow to convey it. And, under such circumstances, the rule established by the overwhelming weight of authority is that the equities of innocent purchasers are protected, even though the party who has been imposed upon or defrauded by his agent or trustee must suffer. As is forcefully said in McNeil v. Tenth National Bank, 46 N. Y. 325, 7 Am. Rep. 341.:

"Where the true owner holds out another, or allows him to appear, as the, owner of, or as having full power of disposition over, the property, and innocent third parties are thus led into dealing with such apparent owner, they will be protected. Their rights in such cases do not depend upon the actual title or authority of the party with whom they deal directly, but are derived from the act of the real owner, which precludes him from disputing as against them, the existence of the title or power, which, through negligence or mistaken confidence, he caused or allowed to appear to be vested in the party making the conveyance."

And in Dickerson v. Colgrove, 100 U. S. 580, 25 L. Ed. 618, it is said:

"The vital principle," upon which this doctrine is based, "is that he who, by his language or conduct, leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted. Such a change of position is sternly forbidden. It involves fraud and falsehood, and the law abhors both." Dover v. Pittsburg Oil Co. et al., 143 Cal. 501, 77 Pac. 405; Woodsum v. Cole, 69 Cal. 142, 10 Pac. 331.

2. (a) But, though we have found Noe to be an innocent purchaser, that is, without notice of the equities of Smith, yet the further question is involved in this case, Was he an innocent purchaser for value? Two hundred and ninety-five dollars of the consideration was an antecedent debt; a debt that Marlow owed Noe Bros. at the time the deed was made. And counsel for Smith insist that "no one can be an innocent purchaser for value, so far as an antecedent debt may enter into the consideration."

But this is a question upon which the courts are divided, and Mr. Pomeroy says that the numerical weight of authority is to the effect that the complete satisfaction and discharge of an antecedent debt is a valuable consideration for the conveyance of real property. Pomeroy's Equity Jurisprudence (3rd Ed.) vol. 2, p. 1328 (citing cases).

And to our mind the weight of reason is also with that holding. For the one reason the courts give for holding that an antecedent debt is not a valuable consideration is that the purchaser is placed in no worse position than he was before; that he has parted with nothing of value. But where there is a complete satisfaction and discharge of the debt, that is not true. For there is a marked distinction between taking property in complete satisfaction and discharge of an antecedent debt, and simply taking a mortgage on it to secure an antecedent debt. And a failure of some courts to bear in mind this distinction is responsible for much of the confusion on this question. In the case at bar, had Noe simply taken a mortgage on the property to secure the antecedent debt of Marlow, that would have placed Noe in no worse condition than he was before; he would, in that event, have parted with nothing of value, but would still have had his debt just as it existed before the taking of the mortgage, his right of an action, and his right to demand security upon the original obligation. But, as is said in State Bank of St. Louis v. Frame et al., in 112 Mo. 502, 20 S. W. 620:

"By the satisfaction [and discharge] of the debt the creditor divests himself of the right of an action, or of securing the original liability, and places himself in a worse condition than he would have done by a definite forbearance of the debt."

(b) Besides, in the case at bar, the debt which was canceled in part consideration of the deed from Marlow to Frank R. Noe was an antecedent debt due a partnership, and the cancellation of the deed as between the grantor and the grantee would not release the grantee (partner) from his liability to the partnership. Rice v. Soders, 1 Posey, Unrep. Cas. (Tex.) 615, is a case in which upon this point the facts are almost identical with the facts in the case at bar, and in the syllabus it is said:

"Crediting on a pre-existing debt due the firm by his vendor the price of land conveyed by the debtor to one of the members is, as against prior equities of third parties therein, a sufficiently valuable consideration to support a conveyance of land to the vendee, where he has no notice of such equities. Greneaux v. Wheeler, 6 Tex. 528; Blum v. Loggins, 53 Tex. 121; Planters' Bank v. Evans, 36 Tex. 595; Alstin v. Cundiff, 52 Tex. 464; Johnson v. Newman, 43 Tex. 642."

And in the body of the opinion the court said:

"In this case, Rice, the purchaser, did more than credit the amount of the purchase money upon an antecedent indebtedness due

to himself. His purchase was made and the land paid for by crediting; that is, satisfying pro tanto the account of Wm. M. Rice & Co. against Ward. On taking the land, Rice became chargeable [it seems the land was bought by Rice and not by the firm] to Wm. M. Rice & Co. with the amount of the purchase. A cancellation of the trade between Rice and Ward would not restore Rice's account with the firm of Wm. M. Rice & Co. to its condition before the purchase. It might cast upon him that part of the account. The proportion of the sum credited upon the account owned by the others of the firm would be a consideration satisfied by the trade. This would be valuable—something paid out or lost in the trade not restored on its rescission. Johnson v. Newman, 43 Tex. 642."

And we know of no court that does not hold that, if for any reason the purchaser is placed in a worse condition than he was before, he is entitled to the protection of the recording acts. For he has been led to change his condition because the true owner or the holder of a secret equity, through negligence or mistaken confidence, has allowed another to appear as the owner with full power of disposition, and

"He who by his language or conduct leads another to do what he would not otherwise have done, shall not subject such person . loss or injury by disappointing the expectations upon which he acted."

But, if either must suffer, it must be he who permitted or made possible the deception.

3. Besides, Noe paid $700 in cash, in addition to the cancellation of this debt, and that was within itself a valuable consideration.

In the few cases that we have found in which this identical condition exists, even courts that hold that a pre-existing debt is not a valuable consideration hold that:

"The fact that a part of the consideration paid for the purchase of land was a pre-existing debt will not prevent the purchaser from being entitled to protection as an innocent purchaser, where the rest of the consideration was new." Adler-Goldman Co. v. Clemons, 64 Ark. 197, 41 S. W. 417.

And this must be true, for the courts universally hold that if the purchaser has changed his position for the worse, that is, if he is placed in a position that he would suffer injury if the deed should be canceled, he is a purchaser for value, and is entitled to the protection of the recording acts. And certainly, when Frank R. Noe parted with $700 in cash on the strength of the apparent title of Marlow, he changed his position

for the worse, and was placed in a position where he would suffer injury if the deed should be canceled. And that is the true test as to whether or not one is a purchaser for value. And on this additional ground Noe must be deemed a purchaser for value, and entitled to the benefit of the recording acts.

The judgment is therefore reversed and the cause remanded, with directions to the trial court to enter a judgment and decree in favor of Frank R. Noe, in accordance with the views herein expressed.

All the Justices concur.