CITY NAT. BANK & TRUST CO. v. FINCH et al.

No. 34365.   Nov. 20, 1951.

*237 P. 2d 869.*

Keaton, Wells, Johnston & Lytle, Oklahoma City, for plaintiff in error.

Richardson, Shartel & Cochran and Joseph G. Rucks, Oklahoma City, for defendant in error, First National Bank & Trust Company.

Herman Merson, Aaron Mesirow, and Mary Elizabeth Cox, Oklahoma City, for defendant and cross-petitioner in error Frank W. Finch.

BINGAMAN, J. This is an action in replevin brought by the City National Bank & Trust Company, as plaintiff, against Frank W. Finch, as defendant. On motion of the defendant, the First National Bank & Trust Company of Oklahoma City, Ed Lowry, and Oklahoma Tax Commission were made additional parties defendant, the Oklahoma Tax Commission being made defendant for the purpose of requiring it to issue a certificate of title to Finch as the owner of a Ford convertible automobile. The City National sought to establish and foreclose a chattel mortgage on the automobile. The First National also sought to establish and foreclose a chattel mortgage thereon, the priority of its mortgage being admitted by the City National Bank, while Finch claimed that he had purchased the automobile prior to the date of either mortgage and that they were not liens upon the car. These issues were framed by appropriate pleadings duly filed and the case was tried to a jury. At the conclusion of all the evidence both banks and Finch moved for directed verdicts.

The trial court denied the motion of the City National for directed verdict, and sustained Finch's motion for a directed verdict as to said bank. It overruled Finch's motion for directed verdict against the First National, and sustained that bank's motion for directed verdict against Finch and judgment was entered accordingly. City National appeals from the judgment, and Finch cross-appeals from the judgment in favor of the First National.

There appears to be little, if any, dispute as to the essential facts which are as follows: Early in February, 1948, Finch, who was a practicing dentist in the Capitol Hill district of Oklahoma City, was approached by one Ed Lowry, whom he knew only casually, and told by Lowry that he, Lowry, was coming up for a new Ford car which he did not need, and that if Finch desired he would purchase the car for Finch at the list price and without any compensation to him. Finch, being anxious to obtain the automobile, gave Lowry a check for $1,000 to make the advance payment in order to hold the car, he being informed by Lowry that Lowry was buying the car from an out-of-town dealer. Lowry thereupon went to F. E. Northway, Inc., a used car dealer in Oklahoma City, and purchased a

Ford convertible, making the down payment of $1,000 and telling Northway that he would obtain the rest of the money in a few days. On February 10th, he advised Finch that he had bought the car and received in cash from Finch the sum of $1,319.09, the balance of the purchase price. He did not pay this money to Northway, but converted it to his own use, and by giving Northway a demand note and a mortgage on the car obtained possession of the car and delivered it to Finch, Finch believing or assuming that the full purchase price had been paid. At the same time Lowry told Finch that there would be some delay in getting a certificate of title, which under the arrangement would be made to Lowry, but that as soon as he obtained it he would turn it over to Finch. On March 13th, Lowry, still being in default of the balance of the purchase price to Northway, made another mortgage and note to Northway, in regular form, providing for monthly payments, which mortgage was assigned by Northway to the First National Bank. On February 28th, Lowry, who had been a customer of the City National Bank, went to that bank and, representing himself to be the owner of the car and having in his possession a certificate of title issued to him, mortgaged the car to City National Bank. At some time in March, the exact date not being shown, but prior to March 23rd, Finch, who had been unable to obtain the certificate of title from Lowry, went to Northway, whom he discovered had sold the car to Lowry, and was informed of the mortgage held by the First National. He thereupon caused Lowry to be arrested and charged with embezzlement, to which charge Lowry pleaded guilty and was sentenced to the penitentiary. Finch then went to the First National and made arrangements to have the mortgage held by the First National foreclosed and the property bought in so that he could obtain title, and agreed that upon obtaining title he would make a new note and mortgage to the First National for the amount of the note and mortgage then held by First National, and would pay it off in monthly installments. At the same time he gave First National a check for the first monthly payment, which was to be held by First National until the title was vested in Finch. Pursuant to this arrangement First National advertised the car for sale because of default in the first payment on the Northway note and mortgage, but before the car was sold this action was brought by City National and the sale was never consummated. In April, after this action was commenced, Finch sent a second payment to the First National, and apparently when that was received both payments were applied on the note and mortgage held by the bank. At the time the mortgage was made to the City National and at the time the note and mortgage was assigned to the First National, neither bank had any knowledge of the transfer of the car by Lowry to Finch, and each understood and believed that Lowry was the owner of the car at the time they obtained their respective mortgages.

City National, in this court, relies solely upon the rule of law that where one of two innocent persons must suffer by the act of a third person, he who put it in the power of the third person to inflict the injury must bear the loss. It asserts that by permitting Lowry to retain the certificate of title, which he exhibited to its officer at the time it made the loan to Lowry, Finch put it in Lowry's power to obtain the loan from the City National, and that therefore Finch should bear the loss. In support of its contention it cites First Nat. Bank of Holdenville v. Kissare, 22 Okla. 545, 98 P. 433; Noe v. Smith, 67 Okla. 211, 169 P. 1108; Kuykendall v. Lambert, 68 Okla. 258, 173 P. 657; Joy v. Farmers Nat. Bank of Chickasha, 158 Okla. 1, 11 P. 2d 1074, and a number of cases from other jurisdictions. In all the Oklahoma cases cited above it appears that the real owner of the property had clothed another with evidence of title to the property, and with pos-

session thereof, thus permitting such other party to hold himself out as the owner, and we held that in such case the real owner was estopped, as against an innocent purchaser or mortgagee, to deny the title of the apparent owner. In Kuykendall v. Lambert the property was in the possession of Kuykendall, to whom theretofore Lambert and Vennum had represented that the property was jointly owned by them, and we held that a receipt in full for payment, exhibited to Kuykendall by Vennum, was under the circumstances a sufficient muniment of title to justify Kuykendall in believing that Vennum was the true owner. The evidence produced by City National does not in our judgment bring it within the rule announced in these cases.

In Adkisson v. Waitman, 202 Okla. 309, 213 P. 2d 465, we pointed out that a certificate of title issued under the motor vehicle code was not a muniment of title which established ownership, but was merely intended to protect the public against theft and facilitate recovery of stolen automobiles, and that where the defendant did not deliver the certificate to the third party it was not sufficient to justify invoking the rule contended for by the bank, although in that case the third party also had possession of the automobile. In the instant case it appears from the testimony of the bank official, who made the loan to Lowry, that Lowry had previously dealt with the bank; that their dealings had been satisfactory, and that when Lowry exhibited the certificate of title, and assured him that he had possession of the car and was the owner, he made no investigation of the records, or other inquiry as to the possession or ownership of the car. Thus it appears that the bank relied largely upon the representations of its customer with whom its dealings had theretofore been satisfactory. It was not justified, under the decision in Adkisson v. Waitman, supra, in relying upon the certificate of title as establishing ownership· in Lowry and the evidence shows that it did not. The trial court did not err in

sustaining the motion of Finch for directed verdict as against said bank.

As to the First National Bank, an entirely different situation exists. While Finch contends that the mortgage held by the bank was made to Northway after the car had been sold and delivered to him and was therefore inferior to his title, the evidence is sufficient to show that when he was apprised of the existence of this mortgage he ratified and adopted it, stating that it looked like he was "stuck", and made arrangements to pay the mortgage off by consenting that the bank advertise the car for sale and then transfer it to him so that he could obtain title. This, we think, clearly shows that he not only ratified the act of Lowry, but assumed and agreed to pay this obligation, which he understood was for the balance of the purchase price of the car. In Bell-Wayland Co. v. Bank of Sugden, 95 Okla. 67, 218 P. 705, we said:

"The acts of a principal are to be liberally construed in favor of an adoption of the acts of his agent, and when the unauthorized acts of an agent are capable of ratification, evidence of acts or conduct of the principal in apparent approval of such acts, suffices, in the absence of evidence to the contrary, to raise a presumption of ratification, as where with knowledge of the unauthorized acts of the agent there is a silence or acquiescence for an unreasonable time without objection on the part of the principal."

Here there was more than mere silence or acquiescence for an unreasonable time. There was an express agreement and understanding that Finch assumed the indebtedness, and he made payments to be held by the bank and applied upon the debt as soon as its mortgage should be foreclosed and the title to the property placed in Finch's name so that he could obtain a certificate of title and insurance on the car. In this court he argues that at the time he dealt with the bank he did not know that the mortgage was made after the car had been delivered to him, but from the evidence he made no investi-

gation as to when the mortgage was made, although undoubtedly the bank records would have shown the date thereof, nor did he check the public records to ascertain that fact. He testified that the date of the mortgage was not discussed with the bank officials, by him, and apparently at that time he considered it immaterial.

In Hill v. Tillman County Bank, 117 Okla. 210, 245 P. 628, we said:

"While the principal must have full knowledge at the time of the ratification of all material facts and circumstances relative to the unauthorized act or transaction, he may deliberately assume the risk and ratify the act without making inquiry for further information than he, at the time, possesses."

We think the above-quoted statement applies here, since, although the means of knowledge of the date of the mortgage were at Finch's disposal, he made no effort to ascertain its date, but deliberately assumed the risk and ratified the act of Lowry. There being no evidence to the contrary, the trial court properly directed a verdict in favor of the First National Bank.

Affirmed.

ARNOLD, C. J., HALLEY, V. C. J., and WELCH, GIBSON, DAVISON, JOHNSON, and O'NEAL, JJ., concur.

CORN, J., dissents to the affirmance as to the City National Bank & Trust Company; otherwise concurs in the result.