# PICKLE *v.* MUSE.

## (*Nashville.* January 16, 1890.)

1. NEGOTIABLE INSTRUMENTS. *Possession of bank check by drawee bank raises presumption of payment.*

Possession, by the drawee bank, of a bank check made payable to a particular person or order, raises a *prima facie* presumption of its payment by the bank, in accordance with its terms.

Case cited and approved: Kincaid *v.* Kincaid, 8 Hum., 17.

2. SAME. *Same. Presumption disputable.*

But this presumption is disputable, and, in this case, is rebutted by the evidence.

3. SAME. *Unauthorized payment of check does not exonerate bank.*

After acceptance by bank of check drawn upon it in favor of a particular payee or order, the bank must, at its peril, see that the check is paid to the payee therein named or upon his genuine indorsement. If the bank mistake identity of payee, or pay to another upon forged indorsement, it will remain responsible.

Cases cited and approved: 11 N. Y., 404; 94 U. S., 343.

4. SAME. *Acceptance of check essential to maintenance of suit upon it.*

Unless the drawee bank has accepted a check, or done some act equivalent to and implying acceptance, the holder of the check cannot maintain suit upon it against the bank.

Cases cited and approved: Bank *v.* Merritt, 7 Heis., 177; Bank *v.* Keesee, 7 Heis., 200; Imboden *v.* Perrie, 13 Lea, 504; 10 Wall., 152; 94 U. S., 343; 107 Mass., 45; 46 N. Y., 82; 73 Penn. St., 485; 100 Penn. St., 23 (S. C., 45 Am. Rep., 353); 22 Gratt., 742.

5. SAME. *Same. What is sufficient evidence of acceptance.*

Acceptance of bank check and promise to pay it in accordance with its directions will be inferred where the drawee bank receives and re-

Pickle *v.* Muse.

tains the check and charges it to the account of the drawer, who had sufficient funds on deposit to meet it, and subsequently lifted the check on settlement with the bank.

Cases cited and approved: 10 Wall., 157; 73 Penn. St., 483 (S. C., 13 Am. Rep., 751); 100 Penn. St., 23 (S. C., 45 Am. Rep., 353); 20 Ohio St., 234 (S. C., 5 Am. Rep., 648).

Case cited and disapproved: 94 U. S., 347.

6. SAME. *Mistake of bank in acceptance and payment of check.*

The fact that the bank, through mistake, received the check from and paid it to an unauthorized person, will not, in such case, prevent the inference of an acceptance of and promise to pay the check according to its directions. The bank will not be permitted to set up its own negligence as a defense.

7. SAME. *Delivery of check essential to payee's right of recovery thereon.*

Unless drawer of bank check has delivered it to the payee, the latter cannot maintain suit upon it against the drawee bank.

8. SAME. *Same. Ratification of delivery to a stranger.*

But an unauthorized delivery of a check to a stranger, who, without authority, presents and receives payment thereof from the bank, may be adopted and ratified by the payee for his own benefit.

9. SAME. *Same. Bringing suit is sufficient ratification.*

Bringing suit upon the check is a sufficient ratification by the payee of the unauthorized delivery.

10. SAME. *Authority to receive check does not embrace authority to collect it.*

Authority to receive a check payable to order does not include authority to collect it; and therefore ratification of the act of receiving does not imply a ratification of the wrongful collection of such check.

Cases cited and approved: 20 Ohio St., 234 (S. C., 5 Am. Rep., 648) 17 N. Y., 207.

FROM BEDFORD.

Appeal from Chancery Court of Bedford County. W. S. BEARDEN, Ch.

COOPER & FRIERSON for Pickle.

MYERS & DAYTON and IVIE & IVIE for Respondents.

LURTON, J. This is a bill in equity to recover the sum of $600, which complainant charges is due to him from either the People's National Bank or John T. Muse, both of whom are made defendants. The bill, in substance, alleges that Muse, being indebted to complainant in the sum of $600, claims, on March 26, 1887, to have paid the debt in a check drawn by himself against his account with the defendant bank, payable to complainant, or his order, and that the check has been paid by the bank and charged up against his account. The defendant bank claims that the check was presented to it for payment by complainant in person, and that it was paid to him. Complainant charges that the check has never been paid to him or to his order, or to any one authorized by him. Upon these facts he prays for a decree against the defendants, or either of them, as the law and facts may justify.

The defendant, Muse, in his answer admits the indebtedness as charged, but insists that he has fully paid same by drawing and delivering his check for the sum of $600 to complainant, and that this check has been paid by the drawee to Thomas Pickle, and charged up to the account of the drawer.

The answer of the bank admits the drawing of the check by Muse, payable to Thomas Pickle or order, and claims that it was presented by the payee and paid to him in person. It admits that the check has never been indorsed by complainant, but insists that it never required the indorsement of such a check when presented for payment by the payee in person. The officers of the defendant bank do not, in their depositions, pretend to any memory as to the payment of this check. They prove that it was the rule and custom of the bank to require the indorsement of all checks drawn against it, where the check is payable to the payee or order, when presented for payment by one other than the payee, but that when presented by the payee in person they do not require his indorsement; that the check in question bears the bank stamp of payment as of March 28, 1887, and has no indorsement; and that, in view of their custom or rule, they would not have paid such a check to any one but complainant, unless indorsed by him. They further insist that the possession of such a check raises a presumption that it was paid to the payee named in the check.

The possession of an order by the person upon whom it is drawn is *prima facie* evidence that the articles or money specified therein were delivered or paid according to the order. *Kincaid* v. *Kincaid*, 8 Hum., 17; 2 Daniel on Negotiable Instruments, Sec. 1647.

This presumption is, however, rebutted by the

positive and uncontradicted testimony of complainant that he in fact never did collect the check or authorize any one to collect it for him. We have carefully considered all the circumstances relied upon by the defendants as tending to support the presumption of payment to complainant in person, and are of opinion that the weight of proof is that the check has never been paid to complainant. The custom of the defendant bank to pay such checks as the one now under consideration to the payee without his indorsement is the occasion of this litigation. The contrary is the usage of commerce. Such a check, returned to the drawer when paid and debited to his account, with the indorsement of the payee, would be a voucher for such payment in favor of the drawer against the payee; but without such indorsement 'it would not be evidence, as between drawer and payee, of such payment. 2 Daniel on Negotiable Instruments, Sec. 1648.

The almost universal custom of business is to make checks payable to the payee or order, for the purpose of making the check a voucher for the payment. So the indorsement by the payee would furnish the banker very high evidence of payment in accordance with the direction of the drawer.

A check drawn in favor of a particular payee or order is payable only to the actual payee, or upon his genuine indorsement; and if the bank mistake the identity of the payee, or pay upon a

forged indorsement, it is not a payment in pursuance of its authority, and it will be responsible. *Morgan v. Bank*, 11 N. Y., 404; 2 Daniel on Negotiable Instruments, Secs. 1618 and 1663; *First National Bank of Washington* v. *Whitmore*, 94 U. S., 343.

This brings us to the question as to whether complainant can recover upon this check as against the bank. While the authorities are not agreed, yet the decided weight of opinion is that the holder of a bank check cannot sue the bank for refusing payment, in the absence of proof that it was accepted by the bank, or that it has done some other act equivalent to and implying acceptance. This has been the uniform view of this Court. *Planters' Bank* v. *Merritt*, 7 Heis., 177; *Planters' Bank* v. *Keesee*, 7 Heis., 200; *Imboden* v. *Perrie*, 13 Lea, 504.

In the latter case the reasons for this doctrine are forcibly stated and the authorities collated by Judge Turney. We are unable to see any reason for disturbing the rule as heretofore declared by this Court, especially as the decided weight of authority is in accord with our decisions. *Bank of Republic* v. *Millard*, 10 Wall., 152; *First National Bank of Washington* v. *Whitmore*, 94 U. S., 343; *Carr* v. *National Security Bank*, 107 Mass., 45; *Ætna National Bank* v. *Fourth National Bank*, 46 N. Y., 82; *Seventh National Bank* v. *Cook*, 73 Penn. St., 485; *Saylor* v. *Bushong*, 100 Penn. St., 23 (S. C., 45 Am. Rep., 353); *Purcell* v. *Allemong*, 22 Gratt., 742.

25—4 P

Has there been any acceptance by the defendant bank of the check in question? It is argued that the check, having been charged up to the account of the drawer and returned to him, is tantamount to an acceptance. The authorities are not agreed as to the effect of such an act. The case of *Millard* v. *Bank* was the case of a payment made of a check upon a forged indorsement. It did not appear that the check had been charged to the drawer, and there was a judgment in favor of the bank. Mr. Justice Davis, in delivering the opinion of the Court, in speaking of the effect of such a charge, said: "It may be, if it could be shown that the bank had charged the check on its books against the drawer and settled with him on that basis, that the plaintiff could recover on the count for money had and received, on the ground that the rule *ex æquo et bono* would be applicable, as the bank, having assented to the order and communicated its assent to the drawer, would be considered as holding the money for the plaintiff's use, and therefore under an implied promise to him to pay it on demand." 10 Wall., 157.

In the subsequent case of *Bank* v. *Whitmore* this very question arose, when the Court, through Mr. Justice Hunt, held that such a charge, having been made through mistake and upon the assumption that it had in fact paid the check to one authorized to collect it, would not authorize the presumption of an acceptance and promise to pay it again. 94 U. S., 347.

Upon a question of commercial law we should be generally inclined to follow any well-settled line of decisions by the Supreme Court of the United States where the question was in this State *res integra.* This question can hardly be regarded as one of commercial law, in the ordinary sense of the phrase. It is rather a question as to the weight and sufficiency of evidence tending to prove an acceptance. We agree that, for want of privity, the holder of a check cannot recover upon it against the bank unless he can show an acceptance. The question presented is as to the weight to be attached to certain acts done by the bank, and the inferences fairly to be drawn from these acts. Where a bank has negligently paid a check to an improper person, it would seem that, in good conscience, the true owner and payee ought not be remitted to his action against a possibly insolvent drawer, for thereby he may lose his debt altogether. A legal principle, however, stands in his way, in that there is no privity between himself and the bank until the bank has assented to the order of the drawer requiring it to pay the holder of the check the sum of money named. This assent, which is necessary before there is any contract relation between the holder of the check and the bank, is what is meant by acceptance. This assent need not be by an indorsement of "good" across the check, or by any other particular words, either in writing or oral. The question of assent or acceptance is one of

fact, and may be made out by any of the methods by which a fact is proven. Did the defendant bank assent to the direction of its customer to pay out of his funds on deposit the sum named in this check? If so, to whom did it assent to pay this sum? The answer is found by inspection of the check. If it assented to pay this check, it undertook and assumed to pay it to Thomas Pickle, or upon his order. Now, the facts which are relied upon as making out such an assent to the direction of the drawer of this check as to bring complainant into privity with the bank, are that it received and retained the check, and that it has charged the check to the account of the drawer and settled with him, deducting the amount of this check. Now, where a bank certifies a check as "good," it is not only authorized, but good banking would require that such check should be then charged up to the account of the drawer as so much of his funds which they have obligated themselves to pay upon that check. Of course, if the check is never paid, or is returned, the drawer would be credited. The debiting of this check to the account of the drawer would then mean only one of two things: that this check has been paid as ordered, or that the fund is held subject to the demand of the payee. The bank must be taken to have assented to pay it as directed—that is, to the payee or his order. That it has assented to the payment of this check is, we think, to be inferred from the

retention of the check when presented at its counter, and the subsequent charge of the check to the drawer. Upon this charge to the drawer we predicate its assent or acceptance. It had no right to charge it to the drawer and to settle his account, unless it had either paid the check to the payee named in the check or on his order; or, having accepted the check, held the fund of the drawer subject to the demand of the payee. It has not paid the check; it must therefore be held to hold the amount of the check for the payee. It cannot escape this consequence by saying that what it has done in receiving the check and in paying it, and in debiting to the account of the drawer, is all through mistake. That would be to suffer it to escape the consequences of its own mistake by pleading its own negligence as a defense. To allow it to plead its own negligence in answer to the natural inference from its receipt and retention of this check, and its subsequent charge to the drawer, might enable it to shelter itself behind the technical defense of want of privity; but, on the other hand, it may result in the loss to complainant of his debt by remitting him to his action against his original debtor, whom he may be unable to coerce into payment. We think there is no inequity in holding the bank to the inference that it has accepted this check, springing out of the fact that it has charged it up to the account of the drawer. This was clearly the view of Mr. Justice Davis, a great

master in the law, as appears from his opinion in the Millard case, *supra*. It has the support of the only other Courts which have been called upon to pass upon this question—the Supreme Courts of Pennsylvania and Ohio. *Seventh National Bank* v. *Cook*, 73 Penn. St., 483 (S. C., 13 Am. Rep., 751); *Saylor* v. *Bushong*, 100 Penn. St., 23 (S. C., 45 Am. Rep., 353); *Dodge* v. *Bank*, 20 Ohio St., 234 (S. C., 5 Am. Rep., 648).

So Mr. Daniel, in his very learned work upon Negotiable Instruments, lends the support of his name to the view we have taken, saying: "There is no doubt that if the bank pays a check upon the forged indorsement of the payee's or special indorsee's name, the payee, or such indorsee, may recover back the amount, if the check had been delivered to him, and the drawer may recover it back if he had not issued it." 2 Daniel on Negotiable Instruments, Sec. 1663.

This brings us to the question as to whether this check was ever delivered to the complainant, for it is insisted that if there has been no delivery to him, that he has no such title to the instrument as will enable him to maintain a suit against the bank. Whether this check was sent to complainant and miscarried, and fell into the hands of a stranger, or whether it was left with the bank, to be credited to the complainant, who kept his account there, and by oversight this credit was not given, is all matter of conjecture. How this check ever reached the bank we are

unable, from the proof, to determine. All we can say is, that we are satisfied that it never came into the hands of complainant. Some one undoubtedly received it from Muse. By suing the bank upon this check complainant may and does ratify the receipt of the check from Muse. It is as if it had been received by an agent for the use and benefit of the complainant. "*Omnis ratihabitio retrotrahitur et mandato priori œquiparatur:*" A subsequent ratification has a retrospective effect, and is equivalent to a prior command. Broom's Maxims, 837.

"This is a rule," says Mr. Broom, "of very wide application."

"No maxim," remarks Mr. Justice Story, "is better settled in reason or law than this maxim; *   *   at all events, when it does not prejudice the rights of strangers."

As illustrative of the application of the rule, the author cites the case where the goods of A are wrongfully taken and sold. The owner may either bring trover against the wrong-doer, or may elect to consider him as his agent and adopt the sale and bring an action for the price. *Smith* v. *Hudson*, 4 T. R., 211.

So in another case it was said "that an act done for another by a person not assuming to act for himself, but for such other person, though without any precedent authority whatever, becomes the act of the principal if subsequently ratified by him, is the known and well-established rule of

law.    In that case the principal is bound by the act, whether it be for his detriment or advantage, and whether it be founded on a tort or a contract, to the same extent and by and with all the consequences which follow from the same act done by his previous authority."    Broom's Maxims, 837.

The bank is not prejudiced by this subsequent ratification, for it dealt with the check as the property of the complainant, and undertook to pay to him or his order.    The effect of this ratification is simply to make the check the property of the complainant.    It does not ratify the collection of the check by one whose act in receiving it is subsequently ratified.    An agency to receive a check payable to order implies no authority to indorse it in the name of the payee, or to collect it without such indorsement.    In the case of *Dodge* v. *The National Exchange Bank* a certificate of indebtedness by the Government to Dodge was remitted by mail to the Paymaster for a check. The mail was robbed and the certificate presented by the thief to the Paymaster, and a check demanded.    The latter, without requiring proof of the identity of the holder of the certificate, issued a check payable to Dodge or order, and took up the certificate.    The indorsement of Dodge was forged, and the check paid.    Subsequently Dodge sued the bank and recovered, the Court holding that he might ratify the taking of the check for the certificate, and sue upon it as an accepted check.    20 Ohio St., 234 (S. C., 5 Am. Rep., 648).

See to same effect *Graves* v. *American Exchange Bank*, 17 N. Y., 207.

The decree of the Chancellor is reversed, and judgment for complainant against the bank for the amount of the check and interest from filing of bill, and all the costs of the cause.

---

### DISSENTING OPINION.

SNODGRASS, J. Disagreeing with the majority upon the merits of the question decided, and strongly opposed to the policy of refusing to follow the Supreme Court of the United States on this important banking and commercial question, I am constrained to briefly express my dissent.

The exact question before us, as shown in the majority opinion, was decided adversely to it in *Bank* v. *Whitman*, in 1877, by the Supreme Court of the United States, without dissent by any member of the Court. In that case the Millard case, in which Judge Davis had doubtfully intimated that the bank might be liable to the payee of a check which it had improperly paid off to an unauthorized holder and charged to account of the drawer, not, as the majority holds here, because such payment to an unauthorized holder is an acceptance and implied promise to pay the real owner or payee (for this doctrine he repudiated), but, because of the charge to the drawer, the bank might be liable to the payee for money had

and received to his use, was considered, and Judge Davis' view repudiated. But as it stood, before rejection, his statement was the doubtfully expressed inference of argument, and was not even an affirmative *dictum,* which, least of all things, is entitled to serious consideration. When the exact question arose in the Whitman case, with the Millard case before it—cited in argument and referred to in the opinion—the Court, on full consideration, unanimously held the bank *not* liable to suit on *any* ground. Judge Davis, who had made the *dictum* in the former case, it is true, was not present, having just before resigned, but the other Judges who made the *decision* were present, and all concurred in it.

The decision commands my most earnest approval; but there are additional reasons why I think it should be followed by this Court.

*First.*—It is the judgment of the highest Court in the country on a general banking and commercial question, where the decision should be treated as conclusive, as on such questions the Supreme Court of the United States follows no State construction. It is not "rather a question of the weight of evidence," as put by the majority, because we all agree that the check in the case before us was not paid to the payee, and, having determined that, we come to settle the question whether upon this conceded condition of affairs the payee can maintain suit against the bank.

*Second.*—The decision should be followed, be-

cause it is an original question in this State, so far as our cases go, and we should, in such case on such question, make our decision conform to that of the Supreme Court of the United States, and thereby have but one rule applied to our citizens. As it is, when our decision conflicts, ours of course can only be good as to the part of the litigation which may arise in the State, for, as to any litigants who may be carried into the Federal Courts by non-residents, and otherwise, the Federal rule will be applied. So it will be in all cases where the national banks go into the hands of receivers and have their affairs wound up in the Federal Courts, and in every case in which, by virtue of the situation of parties or manner in which the question is involved, the Federal Courts have jurisdiction.

Many reasons could be added, but they will suggest themselves. These are sufficient to indicate them and outline the grounds of dissent.

Judge Caldwell joins in this dissent.