**BELL-WAYLAND CO. v. BANK OF SUGDEN.**

No. 14262—Opinion Filed Sept. 18, 1923.

(Syllabus.)

**1. Principal and Agent—Implied Authority of Agent—Indorsement of Checks.**
An agent with express authority to sell goods, collect accounts, and receive money and checks payable to his principal has no implied authority to indorse checks in the name of his principal.

**2. Banks and Banking—Liability of Bank to Holder of Check.**
Checks are but bills of exchange, payable on demand, and do not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder unless and until it accepts or certifies the check.

**3. Same—Acceptance of Bill of Exchange —Requisites.**
The acceptance of a bill of exchange is the significance by the drawee of his assent to the order of the drawer; such acceptance must be in writing, signed by the drawee and must not express that the drawee will perform his promise by any means other than the payment of money.

**4. Same—Payment of Check Upon Forged Indorsement.**
Payment of a check upon an unauthorized or forged indorsement does not operate as an acceptance of the check so as to authorize an action by the real owner to recover its amount from the drawee.

**5. Same—Recovery from Bank by Payee.**
If a check is paid by a bank, other than the payee, upon a forged or unauthorized indorsement, and is collected by it from the drawee, the payee or rightful owner of the check may recover the amount thereof from the bank, such right of the payee to recover being conditioned on the absence of any fault or laches on his part, and upon the absence of a ratification of the indorsement by him.

**6. Principal and Agent—Ratification of Agent's Acts.**
The acts of a principal are to be liberally construed in favor of an adoption of the acts of his agent, and when the unauthorized acts of an agent are capable of ratification, evidence of acts or conduct of the principal in apparent approval of such acts suffices; in the absence of evidence to the contrary, to raise a presumption of ratification, as where, with knowledge of the unauthorized acts of the agent, there is a silence or acquiescence for an unreasonable time without objection on the part of the principal.

**7. Same—Indorsement of Checks by Agent.**
Record examined, and held, that the conduct of the plaintiff was inconsistent with any hypothesis other than that it intended to adopt as its own the unauthorized indorsement of the check in question by its agent.

Error from District Court, Oklahoma County; Cham Jones, Assigned Judge.

Action by Bell-Wayland Company, a corporation, against the Bank of Sugden and S. G. Laughlin. Judgment for defendant bank, and plaintiff appeals. Affirmed.

Joe M. Adams and W. L. Chapman, for plaintiff in error.

Claude Weaver and Ledbetter, Stuart, Bell & Ledbetter, for defendant in error.

NICHOLSON, J. This was an ction by Bell-Wayland Company, as plaintiff, against

the Bank of Sugden and S. G. Laughlin, as defendants, to recover upon 11 checks made payable to the order of the plaintiff, indorsed in its name by the defendant Laughlin and cashed by the defendant bank.

The pertinent allegations of the petition are, in substance, that Laughlin was a traveling salesman in the employ of the plaintiff, with authority to sell goods and collect accounts; that the checks made the basis of this action were drawn by various parties, made payable to the order of the plaintiff and delivered to Laughlin in payment of accounts owing the plaintiff by the drawers of said checks; that all of said checks were by Laughlin indorsed in the name of the plaintiff and the amounts thereof paid to him by the defendant bank; that such indorsements were without authority, were fraudulent, forgeries, and void; that all of said checks except one were drawn on other banks, and by said banks paid to the Bank of Sugden; that Laughlin failed to account to the plaintiff for the funds obtained on said checks; and therefore it prayed judgment for the amounts thereof.

The defendant bank answered, admitting the payment of the amounts on said checks to the defendant Laughlin upon the indorsement of plaintiff's name thereon by him, and, among other things, pleaded that said Laughlin was the agent of the plaintiff with authority to collect any and all accounts due the plaintiff from its customers, to cash and reduce to money said checks; that the defendant bank, in good faith, cashed checks and paid the amounts thereof to Laughlin as the agent of the plaintiff; that the plaintiff held out to said bank, to the business world, and to the public generally that said Laughlin was its agent to sell goods and collect the money therefor, to accept payment by checks, and to collect and cash said checks and to indorse the name of the plaintiff thereon; that after said Laughlin had cashed said checks, and collected the money thereon, the plaintiff, in the year 1918, with full knowledge that its said agent had cashed said checks, expressly ratified the acts of said Laughlin in indorsing said checks.

The defendant Laughlin filed answer pleading payment of various amounts to the plaintiff, and its ratification of his acts in indorsing and collecting said checks.

The plaintiff replied by general denial unverified. Upon the issues thus framed, the cause was tried.

The plaintiff's evidence showed that Laughlin was in its employ with authority to sell goods and collect therefor by check or otherwise, but that he had no authority to indorse checks received in the name of the company; that the checks in question had, after their payment by the various drawees, been by the plaintiff obtained from the drawers thereof, whose accounts had been credited with the amounts of said checks.

Upon the conclusion of plaintiff's evidence, the defendant bank interposed a demurrer thereto, which was by the court sustained, thereupon judgment was rendered in favor of the defendant bank and against the plaintiff, but in favor of the plaintiff against the defendant Laughlin. From the judgment in favor of the bank, plaintiff has appealed.

Three questions are necessarily presented for determination: First, Does the fact that Laughlin, the agent of the plaintiff, had authority to sell goods and collect therefor carry with it implied authority to indorse his principal's name to checks received in payment for goods, and collect the proceeds thereof? Second. If the agent had no authority, either express or implied, to indorse checks in his principal's name, is the defendant bank liable to the plaintiff for the sums of money paid to Laughlin on said unauthorized indorsement? And Third. Did the plaintiff by its conduct ratify the unauthorized acts of its agent in indorsing the checks in its name, and obtaining the money thereon?

We must answer the first question in the negative. It is a general rule applying to all cases of implied agencies that no authority will be implied from an express authority, unless it is positively needful for the performance of the main duties contemplated by the express authority, and this rule is more strictly enforced in connection with the negotiation of commercial paper than in any other transaction. So, in order that the authority to indorse commercial paper as the agent of another may be implied from some other express authority, it must be shown to be necessary to the complete execution of the express power, and unless it is shown to be absolutely necessary to the exercise of such express authority the authority to indorse commercial paper will not be implied. Tiedman on Commercial Paper, sec. 77; Daniel on Neg. Ins., sec. 293; Deering v. Kelso, 74 Minn. 41, 73 Am. St. Rep. 324; Jackson v. Bank, 92 Tenn. 154, 36 Am. St. Rep. 81; Pickle v. Muse, 88 Tenn. 380, 17 Am. St.

Rep. 900; Jackson Paper Mfg. Co. v. Commercial National Bank, 199 Ill. 151, 93 Am. St. Rep. 113.

In the case at bar, Laughlin had authority to sell goods and collect therefor, but the indorsement of checks made payable to the order of the plaintiff was not a necessary incident to his duties, and was in no manner necessary to the performance of such duties, hence, the authority to indorse the checks in question cannot be implied.

The question of whether or not the holder of a check can maintain an action against the bank upon which such check is drawn has in earlier cases wrought many conflicting opinions. There are numerous cases holding that a check holder cannot maintain an action unless the check has been certified or otherwise accepted. These cases proceed upon the ground that there is no privity of contract between the holder of the check and the bank upon which it is drawn, unless the latter does some act by which such privity is created. This is the view adopted by the Supreme Court of the United States, and by some of the state courts. Bank of Republic v. Millard, 10 Wall. 152, 19 L. Ed. 897; First National Bank v. Whitman, 4 Otto, 343, 24 L. Ed. 229; Sims v. American National Bank (Ark.) 135 S. W. 357; Commercial National Bank v. First National Bank, 118 N. C. 783, 54 Am. St. Rep. 753; Houston Gro. Co. v. Bank, 71 Mo. App. 132; Lonier v. State Savings Bank (Mich.) 112 N. W. 1119; Freeman v. Savannah Bank, 88 Ga. 252, 14 S. E. 577.

The opposite view has been taken in a number of cases where it has been held that the payee may maintain an action against the bank as soon as it wrongfully refuses to pay a check drawn on it. Among the cases so holding are Jackson Paper Mfg. Co. v. Commercial National Bank, supra; Roberts, Assignee, v. Austin Corbin & Co., 20 Iowa, 315; Lester & Co. v. Given Jones & Co. 8 Bush (Ky.) 358; Goodner v. Mulcher, 34 La. Ann. 608. These cases proceed upon the doctrine that a check operates as an assignment pro tanto of the funds on which it is drawn from the time it is drawn and delivered as between the drawer and the drawee or holder, and that the assignment binds the bank as soon as the check is presented. However, this doctrine has never obtained in this jurisdiction. Furthermore, the decisions above cited were rendered before the negotiable instruments statutes were enacted, and, of course, have no reference thereto. This

statute is in force in this state, and appears as chapter 65, Comp. Stat. 1921. Section 7855 of such statute provides:

"A check is a bill of exchange drawn on a bank payable on demand. Except as herein otherwise provided, the provisions of this chapter applicable to a bill of exchange payable on demand apply to a check."

By the provisions of section 7859 thereof, a check does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder, unless and until it accepts or certifies the check. By section 7802, it is provided that the acceptance of a bill is the significance by the drawee of his assent to the order of the drawer. Such acceptance must be in writing, signed by the drawee, and must not express that the drawee will perform his promise by any means other than the payment of money.

Under the above statutory provisions, a check is but an inland bill of exchange, and subject to all the rules applicable to instruments of that character, and no obligation is imposed upon the drawee until such check is accepted by him. First National Bank of Durant v. School District No. 4, 31 Okla. 139, 120 Pac. 614; Ballen & Friedman v. Bank of Kremlin, 37 Okla. 112, 130 Pac. 539; Citizens Bank of Gans v. Mabray, 90 Okla. 68, 215 Pac. 1067. It is not claimed that the drawee banks accepted such checks in the manner required by statute, and it cannot be said that the payment of the checks upon the unauthorized indorsement by Laughlin was an acceptance of the checks by the drawees so as to authorize an action by the plaintiff against them, for, as was said in First National Bank v. Whitman, supra:

"We cannot recognize the argument that the payment of the amount of a check or sight draft under such circumstances amounts to an acceptance creating a privity of contract with the real owner. It is difficult to construe a payment as an acceptance under any circumstances. The two things are essentially different. One is a promise to perform an act, the other an actual performance. A banker or an individual may be ready to make actual payment of a check or draft when presented, while unwilling to make promise to pay at a future time. Many, on the other hand, are more ready to promise to pay than to meet the promise when required. The difference between the transactions is essential and inherent."

From the foregoing, it is manifest that there was no liability upon the part of the

banks upon which the checks were drawn to the plaintiff, the payee of said checks. However, the defendant bank was the drawee in but one of the checks; the others it merely cashed upon the indorsement of the plaintiff's name by Laughlin, and collected them from the banks upon which they were drawn.

We fail to find any statutory provisions fixing the liability of a bank cashing a check and collecting it from the drawee under the circumstances surrounding this case, so the rights of the parties must be determined under the common law.

While the authorities are not in harmony, the rule supported by the weight of authority and the better reasoning is thus stated in Morse on Banks and Banking, vol. 1, sec. 248:

"If a negotiable instrument having a forged indorsement comes to the hands of a bank and is collected by it, the proceeds are held for the rightful owners of the paper, and may be recovered by them, although the bank gave value for the paper, or has paid over the proceeds to the party depositing the instrument for collection."

This rule was applied in Buckley v. Second National Bank, 35 N. J. L. 400, 10 Am. Rep. 249, holding that the payee named in a check which was sent to his agent might recover in an action for money had and received, the amount of the check from a bank which cashed it on an indorsement forged by the agent and thereafter collected the amount from the drawee; and to like effect are Farmers v. People's Bank, 100 Tenn. 187, 47 S. W. 234; Talbot v. Bank of Rochester, 1 Hill, 295. In Crisp v. State Bank of Rolla (N. Dak.) 155 N. W. 78, it was held that where a check sent by mail was intercepted on its way, and the indorsement of the payee forged thereon, and the check cashed by the intermediary bank, which in turn collected such check through its correspondent from the drawee, the payee of the check might recover of the intermediary bank in an action of trover for the conversion of such check.

In each of the states where these decisions were made the rule that the payee of an unaccepted check cannot maintain an action against the drawee bank upon refusal of payment is recognized, but these cases base the payee's right of action, not upon any privity between him and the drawee, but upon the ground that his property has been wrongfully taken from him. However, in these cases the right of the payee to recover is conditioned on the absence of any fault or laches on his part, and the question of his ratification of an unauthorized indorsement was not involved.

Hence, it becomes necessary to consider the conduct of the plaintiff in determining whether it should recover. It appears from the testimony on its behalf that it employed Laughlin as a traveling salesman, with authority to sell goods and make collections therefor; that he was never instructed not to indorse checks in plaintiff's name; that he thought he had a right to do so; that he frequently cashed checks payable to the plaintiff at the defendant bank, and remitted the proceeds to the plaintiff, either by his personal check or by draft made payable to the plaintiff or made payable to himself and by him indorsed to the plaintiff. No complaint was ever made of his action in this regard, either to him or to the bank.

The checks in question were indorsed and collected by Laughlin in June and July, 1918; the plaintiff learned of this in September, 1918, at which time it obtained the paid checks from the drawers, and credited their respective accounts with the amounts thereof. The plaintiff did not then notify the bank of said unauthorized indorsement, and made no complaint whatever to it until these suits were filed on the 5th day of March, 1921, almost three years after the payment of said checks, and after the plaintiff knew of the indorsement thereof by Laughlin, but during all this time the plaintiff acquiesced in the indorsement of said checks by him.

It is a rule of general application that the acts of a principal are to be liberally construed in favor of an adoption of the acts of his agent, and when the unauthorized acts of an agent are capable of ratification, evidence of acts or conduct of the principal in apparent approval of such act suffices, in the absence of evidence to the contrary, to raise a presumption of ratification. Thus, where with the knowledge of the unauthorized acts of the agent there is a silence or acquiescence for an unreasonable time, without objection on the part of the principal, he will be presumed to have ratified such unauthorized acts. 31 Cyc. 1641; Pacific Ry. Co. v. Thomas, 19 Kan. 256; Lynch v. Smyth, 25 Colo. 103, 54 Pac. 634.

That the acts of Laughlin in indorsing the checks were capable of ratification by the plaintiff, and that it ratified said indorsement, in so far as the drawers of said checks were concerned, by giving them credit for the amounts thereof, is clear. It is also quite clear that by its long acquiescence therein without objection, it rat-

ified such indorsements so far as the bank is concerned. Its conduct was inconsistent with any hypothesis other than that it intended to adopt the indorsement by Laughlin as its own.

From an examination of the entire record, we are convinced that the plaintiff's own evidence discloses that it was not entitled to recover from the bank, and that the trial court acted properly in sustaining the bank's demurrer to the evidence.

Therefore, the judgment is affirmed.

JOHNSON, C. J., and McNEILL, KANE, KENNAMER, COCHRAN, BRANSON, and MASON, JJ., concur.