M. M. Bell *v.* Citizens National Bank of Elkins *et al.*

(No. 9028)

Submitted April 30, 1940.   Decided May 21, 1940.

*Cyrus S. Kump,* for appellant.
*Arnold & Crawford* and *Joseph J. Madden,* for appellee.

MAXWELL, JUDGE:

The purpose of this suit is to impress on a bank deposit a trust in favor of the plaintiff, and to obtain against both the bank and the alleged wrongful depositor a decretal judgment for the amount of the deposit. From a decree granting to the plaintiff the relief sought by him, the bank prosecutes this appeal.

On May 5, 1936, there was regularly issued to the plaintiff, Martin M. Bell, in his abbreviated name of M. M. Bell, a check on the Treasury of the United States for $408.31 in payment of balance due Bell from the government for land which it had acquired of him in Randolph County. This check was presented at Citizens National Bank of Elkins, defendant, June 1, 1936, by the defendant, Lulu Gordon, adult daughter of the plaintiff. When presented, the check bore on its reverse the purported indorsements of M. M. Bell and Lulu Gordon. She obtained that day from the bank on account of the check $13.31 in

cash and received in her own name a deposit credit of $395.00.

Lulu Gordon placed both indorsements on the check. She testified that her father authorized her to indorse his name thereon. This he denied. Further, she testified that in repayment of money which she had loaned him from time to time he gave her the check for her own use. He denied this and asserted that he did not owe her any money; that when he placed the check in her custody for deposit he did not indorse the check because he supposed that inasmuch as the check was a government obligation it would be considered as a "baby bond" and would not require indorsement.

On June 12, 1936, after Lulu had left the home of her father the preceding day in consequence of differences which had arisen between him and her, he went to the bank and inquired of the cashier how the money had been deposited. Being informed by the cashier that with the exception of the small initial withdrawal Lulu had deposited the money in her own name, the plaintiff thereupon notified the cashier that he (plaintiff) was the rightful owner of the proceeds of the check; that he had not indorsed the check and that the deposit had been wrongfully made in Lulu's name. This appears from the testimony of both the plaintiff and the cashier, but they differ as to what the cashier said to the plaintiff about the matter, either on the occasion of the plaintiff's first call at the bank or when he subsequently returned on one or more occasions. Bell gave testimony that on one of his visits to the bank the cashier said that "the money would have to stay there until the court decided who was the proper owner of it." And further: "He told me absolutely he wouldn't pay my money out until personally directed by the court who was the proper owner of it." The cashier's testimony was that when the plaintiff called at the bank a short time subsequent to June 12th and inquired if the money was still there, he (cashier) informed him in the affirmative and stated that the bank "would continue to hold the money until Mrs. Gordon's trial was over, and

then there had to be some legal action taken to tie up the money in someone's hands or I was going to turn it over to Mrs. Gordon." The cashier's reference to a trial pertained to a pending prosecution for embezzlement which had been instituted against Lulu Gordon in connection with the check transaction.

The plaintiff was arrested August 19, 1936, for alleged violation of federal penitentiary parole and was sent back to prison for completion of a sentence which had theretofore been imposed on him. He was not finally discharged from prison until October 17, 1937. Within a week, (August 24 to 31, 1936) the bank paid checks drawn by Lulu Gordon in complete absorption of the fund in controversy.

The trial chancellor reached the conclusion from the evidence that the plaintiff was not indebted to his daughter in any sum and that he did not give the check to her for her own use, but that he placed the check in her custody for the purpose of having the same deposited to his credit in the defendant bank. These findings of fact were warranted by the evidence and should not be disturbed on this review.

When the check was presented by Lulu Gordon to the cashier of the bank June 1, 1936, he seems not to have given much concern to the purported indorsement of the payee. The cashier testified: "When a customer makes a deposit of what we term 'foreign check', a check on bank other than our own, we as a rule don't bother with the indorsement of the payee of the check we just see that the depositor has indorsed the check." This Court does not understand that the legal requirements are met in that manner. That under such procedure a bank's risk is acute there can be no doubt. Thus, a textual summary: "If a negotiable instrument having a forged indorsement comes to the hands of a bank and is collected by it, the proceeds are held for the rightful owners of the paper, and may be recovered by them, although the bank gave value for the paper, or has paid over the proceeds to the party depositing the instrument for collection." 1

Morse on Banks and Banking (6th Ed.), section 248(b), p. 606. Consult: 5 Michie on Banks and Banking, p. 522; 6 Zollmann on Banks and Banking, p. 465. The holdings of the courts are clear and are in general accord on this principle. *Farmer* v. *People's Bank,* 100 Tenn. 187, 47 S. W. 234; *Allen* v. *Mendelsohn & Son,* 207 Ala. 527, 93 So. 416, 31 A. L. R. 1063; *First National Bank of Waycross* v. *Guaranty Life Ins. Co.,* 45 Ga. 289, 164 S. E. 212.

The trial court made no specific finding on the question of forgery. However, the record warrants the conclusion that the name of plaintiff was indorsed on the check by Lulu Gordon and the proceeds diverted to her use without authorization by the payee. The fact that plaintiff placed the check in Mrs. Gordon's possession with direction to deposit the proceeds to his credit in the bank does not take the case out of the operation of the principle stated above, in the absence of authorization to her to affix his indorsement thereon. Illustrative: *California Stucco Co.* v. *Marine Nat'l. Bank,* 148 Wash. 341, 268 Pac. 891, 67 A. L. R. 1531; *U. S. Portland Cement Co.* v. *U. S. Nat'l. Bank of Denver,* 61 Colo. 334, 157 Pac. 202, L. R. A. 1917A, 145; *Atlantic Trust Co.* v. *Subscribers to Automobile Ins. Exchange,* 150 Md. 470, 133 Atl. 319; *Bell-Wayland Co.* v. *Bank of Sugden,* 95 Okla. 67, 218 Pac. 705; *Universal Carloading & Distributing Co.* v. *South Side Bank,* 224 Mo. App. 876, 27 S. W. (2d) 768. Even if it be considered that the plaintiff's placing of the check in the custody of his daughter with instructions to make deposit in his name vested in her by implication the authority to indorse his name thereon, such implied authority was merely to enable her to make the deposit as directed. A bank can with much greater safety accept a supposed indorsement of a payee of a check for the purpose of making deposit to his own credit than it can accept such supposed indorsement as a general transfer or negotiation of the check.

Grounding its position on the fact of Lulu Gordon's deposit credit dating from June 1, 1936, the bank invokes Code, 31-8-28, whereof the emphasized portion reads: "No

banking institution in this State, including national banking associations, shall refuse to honor any check or draft drawn by the person in whose name any credits for deposits stand on the books of the institution, because of any adverse claim to such credits by any other person, unless such adverse claimant shall execute to such banking institution a bond with sufficient penalty and with acceptable sureties, to indemnify such banking institution from any liability, loss, damage, cost and expenses, which it may incur by holding such credits and refusing to honor the checks or drafts of the person in whose name the credits stand. On the execution and delivery of such bond the banking institution shall hold the funds represented by such credits until the adverse claims of the parties thereto shall have been adjusted, or determined by a court of competent jurisdiction." The trial chancellor expressed the opinion that this statute protects only banks which are not at fault, and, having found that the defendant bank was at fault in entering the credit of deposit in the name of Lulu Gordon, held the statute to be inapplicable herein. We approve this deduction of the chancellor. Clearly, an essential condition precedent for the operation of the statute is that the bank shall be in rightful possession of the controverted deposit.

Where, as in the instant case, the bank assumed a patent risk in accepting the deposit in the manner in which it was made, and promptly thereafter the payee of the check notified the bank of his claim to the fund, the bank may not pay the money to the person in whose name the deposit was made, merely because of the fact of the deposit. It is true that Bell might have sued the bank, but his failure to do so did not operate prejudicially to the bank. Being fully informed that there was controversy between the plaintiff and his daughter respecting the ownership of the fund, the bank could with propriety have brought in the parties under an interpleader. If the bank had held the deposit acquit of dereliction, the quoted statute would be applicable, and the burden would have rested on Bell to execute to the bank a bond as required

by the statute, but because of its non-applicability, for the reasons set forth, the bank cannot be relieved of responsibility for not having obtained judicial determination of the rights of the parties before paying out the money to one of the claimants.

We perceive no error in the chancellor's decree, therefore it is affirmed.

*Affirmed.*