## SECURITY NAT. BANK OF DUNCAN v. JOHNSON.

No. 31252. Dec. 12, 1944.

Rehearing Denied Jan. 30, 1945.

*155 P. 2d 249.*

Brown & Cund and Jerome Sullivan, all of Duncan, for plaintiff in error.

Harley Ivy, of Waurika, and Walter Hubbell, of Walters, for defendant in error.

DAVISON, J. This is an action by A. F. Johnson as the payee of a $2,500 "order" check against the Security National Bank of Duncan, Okla., as a collecting bank, which is asserted to have received the check (from one other than the payee) as a negotiated instrument under a forged and unauthorized endorsement purporting to be the endorsement of Johnson.

The case originated in the district court of Stephens county, where upon trial the plaintiff recovered judgment for $2,300 representing the amount of the check or its proceeds, less a $200 offset claimed by the defendant and allowed by the trial court.

The defendant bank has appealed, appearing herein as plaintiff in error. The plaintiff presents a cross-appeal connected with that portion of the trial court's judgment allowing the offset above mentioned. Our continued reference to the parties will be by their trial court designation.

The record reflects that A. F. Johnson, plaintiff herein, has lived at or near Ryan, in Jefferson county, Okla., for the past 35 years.

On June 25, 1940, the plaintiff herein and one Oscar Wayne Seay, as plaintiffs, instituted in the district court of Jefferson county an action to quiet title to certain land situated in that county. The identity of the defendants in that action is immaterial in this controversy. The cause was docketed as No. 7449.

Robert E. Owens, who was then a practicing attorney living and engaged in the practice of law at Duncan, Okla., was employed as an attorney for the plaintiffs in cause No. 7449. Johnson had been acquainted with Owens for about two years prior to the institution of the quiet title action.

On and immediately prior to the 31st of August, 1940, and while the above mentioned case was pending, an agreement was made between Johnson and Oscar Wayne Seay whereby the latter was to purchase from the former his interest in land involved in said action and other land which is more remotely connected with the transaction here involved. The suit to quiet title was to be continued and prosecuted to final judgment quieting title and when the title had been thus quieted Johnson was to receive the purchase price of his interest in the land in the sum of $2,500. Pending the final and successful termination of the litigation Owens was to hold for subsequent delivery to the vendor Johnson a $2,500 check or the proceeds thereof. (Subsequently, we shall consider separately the evidence bearing upon the question of whether it was the check or the proceeds of the check which was to be held by Owens.)

It was then thought by Johnson that it would take about six months to conclude the quiet title action by procuring judgment therein.

The check involved herein was drawn by Wilmer Seay, the brother of Oscar Wayne Seay, as maker, on the First National Bank of Wichita Falls, Tex. It was dated August 31, 1940, and was made payable to the order of A. F. Johnson. Wilmer Seay was financing the purchase of the property by his brother. He lived in Texas, and according to the testimony was not advised and did not know of any arrangement whereby the check was to be held by Mr. Owens.

The transactions surrounding the execution and delivery of the check occurred in the office of D. H. Stone at Waurika, Okla., on August 31, 1940. Mr. Stone was in the abstracting business. He enjoyed the confidence of Mr. Oscar Wayne Seay, who on accasion sought his advice on business matters.

Wilmer Seay delivered the check, as executed by himself, to D. H. Stone but left the office before the ultimate delivery of the same to Robert E. Owens. Mr. Stone delivered the check to Mr. Johnson in the presence of Mr. Owens and Oscar Wayne Seay. In making such delivery Stone acted for Oscar Wayne Seay. Johnson, at the time, delivered a warranty deed conveying the property to Seay. Johnson was joined by his wife in executing the deed. Thereafter, at the same place, Mr. Johnson delivered the check to Mr. Owens. The check was not endorsed at the time. Stone as a witness testified he did not notice what was said by Johnson to Owens at the time of the delivery. Oscar Wayne Seay did not testify as a witness on this point and Robert E. Owens was, as we shall point out, not available to testify.

Proof relating to the instructions given Owens by Johnson at the time the check was delivered to Owens was thus confined to the testimony of Johnson. A review of Johnson's testimony on this point reflects that on all but one of the several instances when he referred to the transaction he stated in substance that he instructed Owens to hold the check until the judgment quieting title had been procured and become final, at which time Owens was to return the check to him.

However, at one point in his testimony his version of the incident was different. At this point the record reflects the following question and answer:

"Q. It was agreed between you and Owens and Oscar Wayne Seay that he would hold the proceeds of this until your *late* transaction was consummated? A. Yes, sir."

(No doubt "late" is a typographical misprision in the record and the word "land" should be substituted for same.)

Later in his testimony Mr. Johnson was called upon to explain the statement. We quote his explanation:

"Q. Another question, Mr. Sullivan asked you, was that you were willing to turn over all proceeds of this check? A. Yes, sir. Q. Do you mean for him to turn over the proceeds of it, cash it? No, sir. Q. When you answered about whether, or not, taking the proceeds, you didn't understand of the amount? A. No, sir. . . . Q. Did you mean for him to cash that check? A. I didn't Q. Then you didn't mean for him to take the proceeds of it? A. No, sir. Q. Did you ever mean for him to take the proceeds of it? A. No, sir. Q. Did you ever mean, or did you ever instruct him at any time to cash this check? A. Never did."

The explanation is not a denial of the use of the word "proceeds" in instructing Owens but a denial that the word if used was intended to have its full natural meaning.

The trial court, as we shall subsequently see, decided that, as a matter of law, this phase of plaintiff's testimony should be entirely disregarded. We defer for the present our discussion of this view of the evidence.

On the 12th day of September, 1940, Owens, in possession of the check, appeared with the same at the defendant bank. The check was endorsed on the back thereof as follows:

"A. F. Johnson
"Robert E. Owens

"Attorney of Record
"Credit Account
"Robert E. Owens, Trustee"

The bank accepted the check for collection and opened a checking account in favor of Robert E. Owens, trustee. The check was cleared through commercial channels and paid by the drawee bank in Wichita Falls, Tex. Beginning with September 20, 1940, Mr. Owens began to check on the account and occasionally thereafter made additional deposits. None of the checks were drawn in favor of the plaintiff.

On December 31st the balance reflected in the account was $1.06. Thereafter, and prior to April 3, 1941, other deposits were made in and other checks written against the account. The highest balance reflected during this latter period was $743.70 and the balance on April 3, 1941, was 14 cents. Thereafter the account was inactive.

In the meantime Mr. Owens prosecuted the quiet title action to a purportedly successful termination in the district court of Jefferson county. Judgment was procured in that court on January 27, 1941. One of the defendants in the action gave notice of intention to appeal and procured two successive 60-day extensions of time in which to make and serve case-made. The appeal was not perfected or attempted to be perfected in any form either within the time allowed for making and serving a case-made or before the expiration of the six-months period allowed by law for lodging an appeal in this court.

The plaintiff, Johnson, made inquiry from time to time for the purpose of ascertaining the progress and status of the action to quiet title. He was advised that the judgment had been taken in the trial court and the intention of one of the defendants to appeal, and was told by Mr. Counts that the defendant had six months to appeal. Mr. Counts in imparting this information to Johnson formulated his advice on the theory the appeal could be perfected within six months by transcript even after the

time to make and serve a case-made had expired.

It is to be noticed that the particular $2,500 had for all practical purposes been spent by Owens before the judgment was rendered, and that the account of Owens, including subsequent deposits, was exhausted and became inactive before the expiration of the 120 days allowed to make and serve a case-made in cause No. 7449.

The important thing about this phase of the case is that the money was dissipated by Owens before the time arrived for Johnson to demand the check (if Owens was to hold the check as distinguished from the proceeds), thus excusing delay in discovery of the forged or unauthorized endorsement. Brown v. People's National Bank, 170 Mich. 416, 136 N.W. 506, 40 L.R.A. (N. S.) 657.

Owens disappeared in the summer of 1941. Johnson was first advised on telephoning his ofifce that he was on vacation. He never returned from the vacation. He became a fugitive from justice and reports have been received that his clothes were found on a beach in California but no body was discovered. His automobile was also located in that state. He was, when this case was tried, either a suicide or a diligent fugitive.

In the meantime, Wilmer Seay, the brother who financed the purchase of the land, found the check with his bank statement on October 1, 1940, but being unfamiliar with any agreement whereby the same should not be cashed, thought nothing more of the matter.

At the time this case was called for trial the defendant bank presented a motion for continuance on the grounds of absence of a material witness, namely, Robert E. Owens. This motion for continuance was denied by the trial court, evidently upon the theory that there was no adequate showing of reasonable probability that the testimony of the absent witness could be procured within a reasonable time if a continuance should be granted. Such showing is a statutory requisite. 12 O.S. 1941 § 668. The action of the trial court in denying the motion for continuance is free from error, and defendants complaint on that phase of the case is without substantial merit.

On trial of the case a jury was impaneled to try and determine the issues of fact in connection with the liability of the collecting bank upon the check. At the conclusion of the evidence the trial court, on the request of the plaintiff, directed a verdict in favor of plaintiff and against the defendant bank.

In doing so it necessarily concluded as a matter of law that an attorney has no implied authority to endorse the name of his client to a negotiable instrument merely because of the existence of the relationship of attorney and client, and that such authority is not implied merely because the negotiable instrument happens to be connected in some manner with litigation which the attorney is handling for the client. The conclusion of the trial court on these points of law was correct. John F. Rosacker v. Commercial State Bank, 191 Minn. 553, 254 N. W. 824, 94 A.L.R. 551; 5 Am. Jur. 300; annotations 12 A.L.R. 111, at 120; 94 A.L.R. 555, at 562. The particular circumstances of the employment may be such as to create the authority by implication to endorse commercial paper (authorities indicated, supra); however, circumstances as distinguished from oral instructions which in themselves create such implication do not exist in this case.

An attorney can, of course, be vested with express authority to endorse negotiable paper for and on behalf of his client. Or the express authority given by the client as principal may be sufficiently broad to comprehend as an incident thereto the authority to endorse a check or other negotiable instrument. Of course, as in other cases of agency, mere rightful possession of the instrument by the agent does not create an implication of such authority to en-

dorse for the principal. Consider Bell-Wayland Co. v. Bank of Sugden, 95 Okla. 67, 218 P. 705; Oil State Refining Co. v. Bryant, 110 Okla. 83, 236 P. 431; Brown v. People's National Bank, supra.

An included authority of the agent and attorney, Owens, to endorse the name of his principal and client, Johnson, on the check may well be said to have existed in this case if Johnson instructed Owens to hold the proceeds of the check as distinguished from the check itself, for obviously an endorsement of the check was essential to obtain the proceeds thereof which Owens was instructed to hold.

As we have noticed, Johnson's testimony was at one point such as to indicate that he conferred that authority on Owens. It is true that this portion of his testimony was at variance with other portions thereof. We cannot determine from an examination of the record whether the testimony referred to was an inadvertent and mistaken statement or a slip of the tongue in which a party litigant revealed the truth while testifying as a witness. While the trial court was in a better position to judge the weight of the testimony than is this court on appeal, it was improper for it to do so in this character of action since a jury had been impaneled to try and determine the issues of fact.

The statement of a party litigant appearing as a witness in his own behalf, if in the nature of an unqualified concession, a fact against his interest, is regarded in law as an informal judicial admission and conclusive upon him. However, if he makes an inadvertent and mistaken statement on the witness stand, which statement against his interest is due to a misunderstanding (as for instance the question asked), his statement should be disregarded, unless, of course, the statement is not a mistake and reveals the true facts in the case. In instances such as that presented in the case at bar the weight and evidentiary value of such statements should be determined by the jury as a question of fact. 20 Am. Jur. 1032; Mathis v. Tutweiler, 295 F. 661 (C.C.A. 6th Cir.); Frost v. Los Angeles Ry. Co., 165 Cal. 365, 132 P. 442.

In the case last cited it was said:

" . . . . A party who testifies in his own behalf does not do so at the peril of having every slip of his tongue taken as conclusively true, if his inadvertently used words cause him to appear to have made a statement which is not true, but is against his own interest in the case. It is the province of the jury to observe the witness, note his manner of speech, and consider his testimony as a whole in connection with the other evidence, and it is for it to determine therefrom whether he stated the facts as he intended and understood them to be, or whether he unintentionally used words not expressing his real meaning in any particular utterances he may have made."

For other cases dealing with this subject, see annotation 80 A.L.R. 624 at 632 et seq.

It follows that the action of the trial court in directing a verdict against the defendant bank was error and that this case must be reversed and remanded for a new trial. The judgment in connection with the offset claimed by the bank on the theory that Johnson was indebted to Owens for attorney's fees must also be reversed and remanded for the reason that no personal liability of Johnson to the bank is claimed to have existed, and under the bank's theory it could only be claimed as a deduction from its own liability if any should be determined to exist. Further than this we express no opinion on the claimed offset.

The bank also argues that where one of two innocent parties must suffer from the wrongful act of another, the loss should fall upon the one who, by his conduct, created the circumstances which enabled the third party to perpetrate the wrong and cause the loss. This proposition of law is not applicable in this case. This case is governed by the law pertaining to an unauthor-

ized endorsement. This controversy in its major aspects is governed by the negotiable instruments law. Attention is invited to section 23 of the Negotiable Instruments Act, which corresponds to 48 O.S. 1941 § 43. See Brannan's Negotiable Instrument Law, Annotated (4th Ed.) § 23, pp. 182, 191 and 193 et seq.; Uniform Laws Annotated, Vol. 5, Negotiable Instruments, § 23, pp. 224 et seq.; particularly pg. 239 (note 97) et seq. Notice, also, on this point, Oil State Refining Co. v. Bryant, supra.

This cause is reversed and remanded for a new trial.

CORN, C.J., GIBSON, V.C.J., and OSBORN, BAYLESS, WELCH, and HURST, JJ., concur.