Pierson R. Hildreth, S.
This is an accounting of an executrix in which objections have been filed by a creditor.
Decedent was killed in an accident on March 7, 1968. The executrix is his surviving wife, and she is the sole beneficiary under his will. The total value of his estate as shown by the account is $24,804.56. Claims of creditors which have been allowed together with funeral and administration expenses exceed $38,000. Thus the estate is insolvent and general claims will abate pro rata.
Objections to the account were filed by Bank of Commerce, a creditor whose claim of $3,095.87 has been allowed but is unpaid.
Objection IA is to an item of $195 shown in Schedule C as paid to attorneys. The objection is sustained. The court finds that the executrix retained attorneys to defend her in an action brought against her as comaker on a note. She was sued in her individual capacity. The services were not rendered to her in her fiduciary capacity. The obligation to her attorneys is her personal expense. Estate funds may not be used to pay it or to reimburse her. The executrix is surcharged the amount paid from estate funds.
Objections HA and IIB were withdrawn at the hearing.
Objection IIC is an objection to compensation requested by the attorney for the executrix. In the account the executrix requests that the court determine compensation of her attorney. The attorney requests $3,500. The attorney has submitted an affidavit of services and has testified as to the time and work done. The services included all phases of administration, probate collection of assets, attention to claims, sale of real property and a partnership interest, tax proceeding, accounting and hearings. Claims of creditors necessitated other services. The court considers the estimated time spent as fair and perhaps on the conservative side. Considering the nature of this estate and the proper factors for evaluation of reasonable compensation as stated in Matter of Potts (213 App. Div. 59, a affd. 241 N. Y. 593) compensation is fixed and allowed in the amount of $3,200 to include entry of decree and distribution. This is for services rendered to tin- executrix in her fiduciary capacity only. Disbursements of $327.25 are allowed.
Objection 1IIA relates to the payment of $4,130 to Bridgehampton National Bank as shown in items B, C, J>, hi and. .K of Schedule D. The objection is dismissed.
*723 Said Bridgehampton Bank is also a creditor whose claim has been allowed but is unpaid. When decedent died the bank held decedent’s unsecured and unmatured notes in the amount of $12,500. The bank had previously requested decedent to reduce his indebtedness. On March 6, 1968, the day before he was killed, decedent gave the bank five checks aggregating $4,130 each dated March 6, 1968 drawn upon his account in the bank. These were applied to pay off four unmatured notes held by the bank of $700, $1,200, $1,000 and $1,000 respectively, and to reduce and discount another note. The transaction reduced decedent’s indebtedness from $16,400 to $12,500. Decedent had sufficient funds in his account to honor the checks. He died the following day. The checks were posted to decedent’s account on the books of the bank on the day after death, March 8, 1968.
Object ant, Bank of Commerce, contends that since the checks were not posted until after death, Bridgehampton Bank has obtained for itself a preference as against other creditors, and the funds used to pay off the notes should be returned to the decedent’s account as a general estate asset. The evidence does not indicate that when the notes were paid on March 6, that Bridgehampton Bank had any knowledge that the estate would be insolvent. Death of decedent was accidental and unexpected.
The indebtedness of decedent to Bridgehampton Bank to the extent of the $4,130 which was paid March 6,1968 was by checks drawn upon the bank itself. Subdivision (2) of section 4 — 405 of the Uniform Commercial Code provides that even with knowledge a bank may for 10 days after date of death pay or certify checks drawn on or prior to that date unless ordered to stop payment by a person claiming an interest in the account. No stop payment order was given by anyone. Even prior to such statute it has been the rule that payment of a check by a bank after death of the maker was valid when made in good faith without knowledge of death, and that such payment cannot be recovered by the estate of the maker. (Glennan v. Rochester Trust & Safe Deposit Co., 209 N. Y. 12.)
It also seems to the court that the transaction here was fully completed and the checks were paid on March 6, 1968 before decedent died. The situation is analogous to that found in Pratt v. Foote (9 N. Y. 463). When the bank accepted the checks drawn upon itself in payment of the notes, the decedent’s funds were immediately appropriated and used to reduce his indebtedness. The effect is the same as though the checks were cashed and the money immediately repaid the bank to pay off the notes.
*724 Final payment occurs when the item is paid in cash or settlement is made without reservation of a right to revoke. (Uniform Commercial Code, § 4-213.) The notes were fully paid off on March >6, 1968. That was what the decedent and bank intended. Although the drawing of a check does not per se operate as an assignment of the funds (Uniform Commercial Code, § 3-409), it may have that effect when the parties so intend and the bank accepts it.
Decedent received full consideration, the payment was made during decedent’s lifetime, and there is no proof of any intent to defraud any other creditor. (Cf. Matter of Plotkin, 56 Misc 2d 754.)
Objection IVA relates to a setoff shown in Schedule D-2 and Gr-2 of the sum of $1,564.56 against the indebtedness of decedent to Bridgehampton Bank. The objection is sustained.
The balance in decedent’s account in Bridgehampton Bank as of the date of death, March 7,1968, was $1,564.56. The officer of the bank testified that such amount still remains on deposit. This represented the balance remaining in decedent’s account after payment of checks drawn by decedent including those used to reduce the indebtedness from $16,400 to $12,500. This balance became on decedent’s death a general asset of the estate.
The executrix in her account seemingly seeks to apply it entirely in reduction of the claim of Bridgehampton Bank based upon the notes aggregating $12,500 which were unmatured when decedent died. The bank is a general creditor.
The court holds that the bank is not entitled to have the funds on deposit in decedent’s account at death set off as against its own unmatured debt when so doing would give it a preference over other creditors. (Jordan v. National Shoe and Leather Bank, 74 N. Y. 467; Gilmartin v. Osborne Trust Co., 266 App. Div. 1022, affid. 292 N. Y. 629; Gerseta Corp. v. Equitable Trust Co., 241 N. Y. 418.)
Objection IVB relates to the allowance of a claim of one P. C. Schenck in the amount of $4,200 shown in Schedule C as allowed but unpaid. The evidence at the hearing is that P. 0. Schenck was decedent’s father, and that the $4,200 is! an indebtedness he owed Bridgehampton Bank. There is no evidence sufficient to establish any indebtedness of decedent to his father in that or any other sum. The court would be required to dismiss the claim as improperly allowed except for the fact that a jurisdictional defect exists which prevents any determination of the objection at this time.
The claim having been allowed by the executrix its validity is prima facie established. SOPA 1807 provides that when any *725 party adversely affected by the allowance of such claim files objections in the proceeding for judicial settlement a copy of the objections must be served on all parties who have appeared and “ if the claimant has not appeared a copy shall be served upon bim personally or by mail.” The claimant, P. 0. Schenck has not appeared in this proceeding although he was cited and served. The objections by Bank of Commerce to the allowance of such claim have not been served upon him. So far as appears he has no knowledge that the allowance of his claim is questioned or that it may be dismissed. SCPA 1807 further provides that if the objections to allowance of the claim are sustained the claim shall be dismissed if it has not been paid. In order for a judicial determination of the objections to be binding upon claimant, claimant must have notice of the objections. Under SCPA 302 (subd. 1, par. [c]) objections are to be served upon the return of process or at such later date as directed by the court. Where the manner of giving notice is not otherwise prescribed the court may direct both the form and time and manner of service. (SCPA 313.)
The court rules that jurisdiction to determine this objection is lacking unless claimant is first served with a copy of the objections as provided by SCPA 1807. Since neither petitioner, objectant nor other parties who appeared brought this omission to the attention of the court at the time of the hearing, and all proceeded with proof upon the assumption that the statute had been complied with, the court is of the opinion that a rehearing upon this issue should be directed and held after service of the objections upon claimant.
Accordingly, this matter is restored to the calendar for such rehearing at 11 a.m. August 24, 1970. Objectant may serve objections upon claimant before August 15, 1970. If objections are not served upon claimant objection IVB will be dismissed. Petitioner is directed to serve notice on all parties, who have appeared, of the rehearing hereby directed.
In her account the executrix stated that commissions were waived. At the hearing she requested that the waiver be withdrawn and that statutory commissions be allowed. It also appears that she claims no exemptions under EPTL 5-3.1. The waiver of commissions inures to the benefit of the estate. (Matter of Hammersdorf, 125 N. Y. S. 2d 276.) All parties to the accounting except those who appeared have had no notice of this change. Where no element of estoppel is present, a waiver of commissions which is a unilateral act may be withdrawn. (Matter of Peskin, 1 Misc 2d 442.) Parties who have not appeared must be deemed to have relied on the account as *726 filed. Therefore permission to withdraw the waiver is denied, unless prior to entry of decree consent to allowance of statutory commissions is obtained from all parties affected.
After determination of issue on which a further hearing is directed, account is to be revised in accordance with the determinations made, after which decree may be settled on notice.