Adelaide CIRAR, Administrator of the Estate of William F. Marlow, Deceased, Appellant,

v.

BANK OF HARTSHORNE and H. L. Dollins, Jr., Appellees.

No. 50007.

Supreme Court of Oklahoma.

July 26, 1977.

Rex D. Brooks, Oklahoma City, for appellant.

Cornish & Cornish, Inc. by Richard P. Cornish, McAlester, for appellees.

HODGES, Chief Justice.

The only question on appeal is whether the Bank of Hartshorne, and its employee, were protected from liability under the pro-

vision of 12A O.S.1971 § 4–405 [1] when, with notice of the death of William F. Marlow, it cashed a check drawn by decedent within ten days of his death to pay for repairs incurred by the bank as the result of damage caused by decedent to its drive-in window facility.

The administratrix of the decedent's estate, Adelaide Cirar, appellant, brought an action against the Bank of Hartshorne and H. L. Dollins, Jr., appellees, seeking a judgment against them for improperly paying a check drawn by decedent when it was presented for payment, and negotiated by the bank as payee. The case was tried to the court after the parties agreed that the cause of action involved strictly a question of law and stipulated to the following facts: " . . . It is stipulated by both parties that the check in question was written by William F. Marlow to the Bank of Hartshorne on May 14, 1974. It is further stipulated that the check was sent to The National Bank of McAlester on or about June 1st and that the same was returned to the Bank of Hartshorne on or about June 3, 1974, and the same was paid by the Bank of Hartshorne on June 4, 1974.

It is further stipulated that Mr. Marlow departed this life on May 30, 1974, and that the plaintiff by virtue of Letters issued on June 3, 1974, is the Administratrix of his estate.

It is further stipulated that on or about May 31, 1974, the plaintiff did present herself at the Bank of Hartshorne and did inform George Dollins, a bank official, that her father was deceased, and this is the extent of her notification to the Bank of Hartshorne.

It is further stipulated that Mrs. Cirar telling Mr. Dollins of Mr. Marlow's death did place the bank upon notice of his death on May 30, 1974.

It is further stipulated that the $1,250 has been paid from the Marlow account and that the recipient of the money was the Bank of Hartshorne."

The trial court entered judgment in favor of appellees. The court found: the appellant notified the bank of the death of her father on or about May 31, 1974; her father died on May 30, 1974; and that she did not affirmatively, in any manner, order the bank or appellee Dollin to stop payment on the check. The court held before a bank may be held liable under the provisions of 12A O.S.1971 § 4–405(2) for payment of a check drawn on the account of a decedent and paid by the bank within ten days after the death of the drawer, in addition to being notified of the fact of death, the bank must be ordered to stop payment by a person claiming an interest in the account.

It is asserted on appeal that the court erred in its application of 12A O.S.1971 § 4–405(2) because the section applies only to the bank as a payor bank and not to the bank when it is a holder of the checks as payee. We do not agree. A holder is a person who is in possession of an instrument issued to him or to his order.[2] A payor bank may, pursuant to 12A O.S.1971 § 4–401 make payment to a holder and charge its customer's account any item which is properly payable from the customer's account.[3]

---

1. It is provided by 12A O.S.1971 § 4–405(1), (2)

(1) A payor or collecting bank's authority to accept, pay or collect an item or to account for proceeds of its collection if otherwise effective is not rendered ineffective by incompetence of a customer of either bank existing at the time the item is issued or its collection is undertaken if the bank does not know of an adjudication of incompetence. Neither death nor incompetence of a customer revokes such authority to accept, pay, collect or account until the bank knows of the fact of death or of an adjudication of incompetence and has reasonable opportunity to act on it.

(2) Even with knowledge a bank may for ten days after the date of death pay or certify checks drawn on or prior to that date unless ordered to stop payment by a person claiming an interest in the account.

2. 12A O.S.1971 § 1–201.

3. It is provided by 12A O.S.1971 § 4–401:
(1) As against its customer, a bank may charge against his account any item which is otherwise properly payable from that account even though the charge creates an overdraft.
(2) A bank which in good faith makes payment to a holder may charge the indicated account of its customer according to

 A check does not of itself operate as an assignment of any part of the drawer's funds deposited with the bank upon which the check is drawn,[4] but is merely an order upon a bank to pay from the drawer's account. It may be revoked at any time by the drawer before it has been certified, accepted or paid by the bank.[5] The check is revoked by operation of law ten days after

> (a) the original tenor of his altered item; or
> (b) the tenor of his completed item, even though the bank knows the item has been completed unless the bank has notice that the completion was improper.
>
> A holder in due course is defined by 12A O.S.1971 § 3–302:
>
> (1) A holder in due course is a holder who takes the instrument
> (a) for value; and
> (b) in good faith; and
> (c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person.
> (2) A payee may be a holder in due course.
> (3) A holder does not become a holder in due course of an instrument:
> (a) by purchase of it at judicial sale or by taking it under legal process; or
> (b) by acquiring it in taking over an estate; or
> (c) by purchasing it as part of a bulk transaction not in regular course of business of the transferor.
> (4) A purchaser of a limited interest can be a holder in due course only to the extent of the interest purchased.
>
> Value is defined by 12A O.S.1971 § 3–303:
> A holder takes the instrument for value.
> (a) to the extent that the agreed consideration has been performed or that he acquires a security interest in or a lien on the instrument otherwise than by legal process; or
> (b) when he takes the instrument in payment of or as security for an antecedent claim against any person whether or not the claim is due; or
> (c) when he gives a negotiable instrument for it or makes an irrevocable commitment to a third person.

4. 12A O.S.1971 § 3–409.

5. *Port City State Bank v. American National Bank,* Lawton, Oklahoma, 486 F.2d 196 (10th Cir. 1973); *Southern Coal Co. v. McAlpine Coal Co.,* 176 Okl. 492, 56 P.2d 413 (1936); *Bell-Wayland Co. v. Bank of Sugden,* 95 Okl. 67, 218 P. 705 (1923).

6. See 12A O.S.1971 § 4–405(2) note 1, supra. *Also see Holsomback v. Akins,* 134 Ga.App. 543, 215 S.E.2d 306 (1975); *Black v. Hart,* 301 So.2d 787 (Fla.App.1974); *In re Schenck's Estate,* 63 Misc.2d 721, 313 N.Y.S.2d 277 (1970);

the death of the drawer, although the drawee bank is not liable where it has in good faith honored such instrument without knowledge of the depositor's death, or where it has not been ordered to stop payment by a person claiming an interest in the account.[6]

AFFIRMED.

*Lambeth v. Lewis,* 114 Ga.App. 191, 150 S.E.2d 462 (1966); Annot., "Construction and Effect of UCC art. 4, Dealing with Bank Deposits and Collections," 18 A.L.R.3d 1376 (1968). See also Atkins, "Uniform Commercial Code Commentary," XII B.C. Ind. & Com.L.Rev. 282 (1970).

The only Oklahoma case dealing with § 4–405 is *Anderson v. Merriott,* 550 P.2d 1320, 1323 (Okl.1976) which dealt primarily with a debtor-creditor problem in an estate. The Court said:

> " . . . Petitioner's demurrer is based on his allegation check was revoked before payment by death of drawer, citing 12A O.S.1971 § 4–405. This argument is without merit. § 4–405 of the Uniform Commercial Code relieves bank of liability for payment of checks presented within ten (10) days of drawer's death or for payment without notice of drawer's death. . . . "

The Official Comment to the Uniform Commercial Code, Uniform Laws Annotated § 4–405(3) provides:

> Subsection (2) provides a limited period after death during which a bank may continue to pay checks (as distinguished from other items) even though it has notice. The purpose of the provision, as of the existing statutes, is to permit holders of checks drawn and issued shortly before death to cash them without the necessity of filing a claim in probate. The justification is that such checks normally are given in immediate payment of an obligation, that there is almost never any reason why they should not be paid, and that filing in probate is a useless formality, burdensome to the holder, the executor, the court and the bank.
>
> This section does not prevent an executor or administrator from recovering the payment from the holder of the check. It is not intended to affect the validity of any gift causa mortis or other transfer in contemplation of death, but merely to relieve the bank of liability for the payment.

The Comment to the Oklahoma Uniform Commercial Code 12A O.S.1971 § 4–405 contains the same language as § 4–405(3) of the ULA Comment and also provides:

> Any surviving relative, creditor or other person who claims an interest in the account may give a direction to the bank not to pay

LAVENDER, V. C. J., and DAVISON, IRWIN, BERRY, BARNES and DOOLIN, JJ., concur.

checks, or not to pay a particular check. Such notice has the same effect as a direction to stop payment. The bank has no responsibility to determine the validity of the claim or even whether it is "colorable". But obvious-

ly anyone who has an interest in the estate, including the person named as executor in a will, even if the will has not yet been admitted to probate, is entitled to claim an interest in the account.